# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

FORT SMITH LIGHT & TRACTION COMPANY *v.* BOURLAND.

## Opinion delivered June 18, 1923.

1. STREET RAILROADS—REVIEW OF ACTION OF CITY AUTHORITIES.—Under Acts 1921, p. 177, abolishing the Corporation Commission and restoring to municipal governments control of street railroads, and § 19, providing that any person aggrieved by an order of a city council or commission may have such order reviewed by the circuit court, *held* that whether a proceeding to review an order of a city commission be treated as an appeal under the statute or as an independent proceeding to declare the statute void, the hearing before the circuit court was *de novo,* and the same facts are considered and like principles are applicable in either case, in determining the right of a street railway company to discontinue service on a portion of its line.

2. COURTS—JURISDICTION OF SUPREME COURT.—Under Const., art. 7, § 4, limiting the jurisdiction of the Supreme Court to appellate and supervisory jurisdiction, and § 5, declaring that the Supreme Court shall exercise only appellate jurisdiction except in issuing writs of quo warranto, *held* that Acts 1921, p. 205, § 21, providing for appeals to the Supreme Court from circuit courts in review of orders of a city commission relating to street railways, in pursuance of § 19, and providing that any finding of the circuit court shall not be binding on the Supreme Court, which shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable, is valid.

3. COURTS—JURISDICTION OF SUPREME COURT.—While the Legislature may not confer original jurisdiction on the Supreme Court, it may provide, in cases where there is no constitutional guaranty of a jury trial, that the Supreme Court on appeal may determine the weight of evidence.

4. STREET RAILROADS—REFUSAL OF PERMISSION TO REMOVE TRACKS—EVIDENCE.—In a proceeding by a street railway company to remove its tracks from a street in pursuance of Acts 1921,

p. 205, § 19, evidence *held* sufficient to warrant a refusal of permission.

5. Street railroads—operating expense of part of line—evidence.—In a proceeding by a street railway company for permission to remove its tracks from a street, as provided by Acts 1921, p. 205, § 19, testimony as to the cost of operating cars on the portion of the line in question by apportionment in proportion to the total distance of the line was competent.

6. Street railroads—right to abandon fart of line.—A street railway company may not abandon a particular part of its line of its own choice, on the ground that such part was unprofitable, as the project must be considered as a whole in determining whether the requirement of service on that particular part of the line was confiscatory.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; affirmed.

*Hill & Fitzhugh,* for appellant.

A public service corporation, we know, can not select and serve only the portion of the territory covered by its franchise which it is profitable for it to serve, and abandon or restrict the service to the remaining portions. 245 U. S. 345, 62 L. ed. 337. But property invested in public service corporations is fully protected as other private property, and the owners cannot be deprived of it without just compensation, or due process of law. The evidence shows there is no probability of the service on Greenwood Avenue ever becoming profitable, that it is operated at a loss, and that appellant is making less than 2 per cent. return upon its entire property devoted to the street-car service. 244 U. S. 388, Law. ed. 1216; 252 U. S. 100, 64 L. ed. 476; 251 U. S. 393, 64 L. ed. 323; 119 Ark. 239; 105 Ark. 314; 254 U. S. 513, L. ed. 380. Requiring a company to keep on at a loss would be an unconstitutional taking of its property. 199 Mass. 394, 19 L. R. A. (N. S.) 865; 113 Fed. 823, 145 Fed. 281; note 11 A. L. R. 252; 1918-E, 748. The circuit court quoted from §§ 791-2, 834, 836, Digest of City Ordinances, which were not introduced in evidence or not part of the record, and of which the court does not take judicial cognizance. 68 Ark. 483; 108 Ark. 24.

These sections, except 791, are the same as sections of the franchise ordinance. The appellant surrendered its franchise and was issued an indeterminate permit in lieu thereof. The court erred in holding, after the act of 1919 divested the city of Fort Smith of the right to enforce the terms of the franchise against appellant, that it was not absolved from performance of its contractual obligation. 145 Ark. 205; 148 Ark. 260; 149 Ark. 509. The surrender of the franchise and receiving in lieu thereof an indeterminate permit was a mutual rescission of the old contract and the making of a new one in its place.

*Fadjo Cravens* and *Daily & Woods,* for appellee.

Appellant attempted by the proceeding to abandon the 1,620 feet on Greenwood Avenue of one of the best paying lines of its entire street railway system, and this court should affirm the judgment of the circuit court denying its right to do so. Appellant's case is presented on the erroneous theory that it should be tried *de novo* here under § 21, act 124 of Acts of 1921. No motion in writing praying an appeal was filed as required by said act, and the Legislature was without power to enlarge the jurisdiction of the Supreme Court thereby. This question was suggested in *Ry.* v. *Stewart,* 150 Ark. 590, but had already been decided in *Harding* v. *State,* 94 Ark. 65; §§ 4 and 15, art. 7, Constitution of Arkansas. In discussing the case on its merits, however, we assume that this court will try it as it does chancery cases, *de novo.* Appellant was not relieved of its obligation to supply service to the people of the city by securing an indeterminate permit. Act 1919, §§ 15 and 17, act 124, Acts of 1921. The action refusing permission to appellant to abandon the service on its line on Greenwood Avenue was not unreasonable nor arbitrary. 245 U. S. 345, 62 L. ed. 337. 119 Ark. 239 has no application here. No question of rates comes into this case. Even if appellant could make a showing, which it can not, that would warrant the abandonment of its entire street railway system, or the discontinuance of service on the line

of which the tracks on Greenwood Avenue is a part, it would not be entitled to select this Greenwood Avenue part of the line or system for abandonment.

*Hill & Fitzhugh,* in reply.

Once an appeal was taken, the appellant is entitled to have it reviewed under the rule as provided in § 21, act 124, of Acts 1921, regardless of whether a motion for appeal was filed as required by said act. It may be the court could have refused to grant this appeal without such motion filed, but it was granted. 51 Ark. 344; 54 Ark. 554; 94 Ark. 345; 94 Ark. 347; 58 Ark. 446. Act providing such cases shall be reviewed and determined in Supreme Court as are chancery cases, *de novo,* not unconstitutional, and this complaint states a cause of action independent of the proceeding before the city commission, as well as a cause for relief from the order of the city commission by a review thereof under § 19, act 124, Acts 1921. See 253 U. S. 287; 230 U. S. 352; 230 U. S. 474; 230 U. S. 553; *Keller* v. *Potomac Electric Power Co.,* 261 U. S. 428. Case of 94 Ark. 65 not applicable here. Public utility not bound by order of Commission, reasonable or fair, irrespective of its financial status. 252 U. S. 10.

McCULLOCH, C. J. Appellant is a corporation owning and operating a street-car system in the city of Fort Smith, and this case involves the right of appellant to remove and abandon a portion of its track along one of the streets of the city, contrary to the orders of the city commissioners, the city of Fort Smith being operated under a commission form of government.

Appellant formerly operated under a franchise granted by the city government many years ago, but, during the existence of the Corporation Commission, under the act of April 1, 1919 (Crawford & Moses' Digest, § 1607 *et seq.*), it surrendered its charter and received what is designated as an "indeterminate permit" (Crawford & Moses' Digest, §§ 1655, 1656), and

has continued to operate since that date under said permit.

The act of February 15, 1921 ('General Acts, 1921, p. 177) abolished the Corporation Commission and restored to municipal governments the control and supervision of street railroads and certain other public service utilities operating within municipalities.

On November 7, 1922, appellant presented a petition to the city commission of Fort Smith, pursuant to § 10 of the last statute referred to, for permission to abandon and remove its track on Greenwood Avenue and discontinue service to that extent. There was a hearing before the city commission, and permission to remove and abandon the track on Greenwood Avenue was denied, whereupon appellant filed its petition, or complaint, in the circuit court of Sebastian County, setting forth the grounds upon which it claimed the right to discontinue service and remove its tracks on Greenwood Avenue, and praying that the circuit court make an order such as should have been made by the city commission, on petition of appellant, granting permission to appellant to cease operating the line on that street. Appellees, the city commissioners, filed a response denying the allegations of appellant's complaint with respect to the grounds for abandonment of the track on Greenwood Avenue, and, upon the issue thus framed, there was a trial of the cause in the circuit court, which resulted in a judgment denying the relief prayed for by appellant, and affirming the order of the commission. An appeal has been prosecuted to this court.

Section 19 of the act of February 15, 1921, *supra,* provides that any person, firm or corporation aggrieved by any order made by a municipal council or city commission, pursuant to the authority conferred under that statute, "shall have the right to have said action on the part of such municipal council or city commission reviewed as to its legality, validity, fairness and reasonableness by the circuit court of the county in which said

municipal council or city commission is located. * * * Said review, however, by the said circuit court shall be made, provided, and upon condition, that the applicant files in said court or in the office of the clerk thereof, within sixty (60) days after making of such order or ordinance or rate as to which the appeal is desired, its petition or complaint, as in other cases, setting out the order or ordinance or rate or other matter therein complained of, therein alleging, according to the usual rules of pleading, facts showing that the applicant is entitled to the relief therein prayed, upon which complaint summons shall be issued and served in the manner and for the time as in other circuit (court) cases; the said appeal in the circuit court shall proceed *de novo.*"

In the brief of counsel for appellant attention is called to the fact that the complaint filed by appellant is applicable either in an independent action to prevent unlawful restraint by the city commission, or to a complaint, or petition, in the nature of appeal under the statute. No point of objection is made by counsel for appellees to this method of treatment of that subject, as in a review either by the methods prescribed by the statute or by an independent action, if the statute may be ignored and an independent action for relief instituted, there is a hearing *de novo,* and the same facts are considered and like principles of law are applicable in either case in determining the right of appellant to discontinue service as claimed.

In the case of *St. Louis Southwestern Ry. Co.* v. *Stewart,* 150 Ark. 586, we decided that a similar provision in the act of 1919, *supra,* afforded a judicial review *de novo* of the orders of the commission.

The question presented for our decision on this appeal is whether the order of the commission refusing to grant permission to appellant to abandon the track and service in question is reasonable, or whether it is unreasonable and arbitrary and operates as a confiscation of appellant's property. The first question to be con-

sidered in this connection is the extent of and purpose for which we may consider the testimony in the case.

Section 21 of the act of February 15, 1921, *supra,* provides for appeals to the Supreme Court from judgments of the circuit courts at the instance of the party aggrieved, and further provides that "any finding of fact by the circuit court shall not be binding on the Supreme Court, but the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable." We have not heretofore interpreted the latter part of the statute nor determined the question of its constitutionality, but, on the contrary, we have pretermitted a decision of that question in several cases which have arisen since this statute and the act of 1919, *supra,* were enacted. *St. L S. W. Ry. Co.* v. *Stewart, supra; Clear Creek Oil & Gas Co.* v. *Fort Smith Spelter Co.,* 148 Ark. 260.

Counsel for appellees insist that the statute making it the duty of this court to review the evidence and determine its weight is unconstitutional. We deem it inappropriate to further postpone the decision of this important question, and we proceed to pass upon the validity and constitutionality of the statute at this time. It is argued that the imposition of this duty upon the Supreme Court offends against the provision of the Constitution which limits the jurisdiction of this court to appellate and supervisory jurisdiction. Constitution, art. VII, § 4. The Constitution in plain terms declares that the Supreme Court shall exercise only appellate jurisdiction except in the single instance of issuing writs of quo warranto to circuit judges and chancellors and to officers and political corporations "when the question involved is the legal existence of such corporations." Constitution, art VII, § 5. We have often, in the decisions of this court, declared that it was beyond the power of the Legislature to confer original jurisdiction upon this court. The question therefore narrows to the inquiry whether this statute is an attempt to confer

original jurisdiction, and whether its observance by this court would come within the exercise of appellate jurisdiction as known and understood at the time of the adoption of the Constitution.

In *Harding* v. *State,* 94 Ark. 65, the following statement is found:

"The Legislature cannot add to or take from the jurisdiction vested in it by the Constitution. It cannot vest it with the jurisdiction to try capital offenses on appeal or writ of error as the circuit court. It is only for errors of that court that it has been or can be vested with jurisdiction to reverse or modify the judgments of such courts. Unless it appears that the circuit court has committed errors, this court can only affirm."

That case is not, we think, decisive of the question now presented, for the point in that case was whether or not the Legislature had attempted to compel this court to hear capital cases *de novo,* and whether the Legislature could do so. That was a case falling within the provision of the Constitution guaranteeing the right of trial by jury and declaring that the trial court shall not charge upon the weight of the evidence. The present case falls within that class of cases in which there is no constitutional guaranty of trial by jury, not being a case which was triable by a jury at common law. *Govan* v. *Jackson,* 32 Ark. 553; *State* v. *Churchill,* 48 Ark. 426; *Wheat* v. *Smith,* 50 Ark. 266; *Drew County Timber Co.* v. *Board of Equalization,* 124 Ark. 569; *Missouri Pacific R. Co.* v. *Conway County Bridge Dist.,* 134 Ark. 292.

The Constitution itself affords no definition of the term "appellate jurisdiction" and does not in terms prescribe its extent and limit. We find nothing which would lead to the belief that, at the time of the adoption of the Constitution, the term "appellate jurisdiction" excluded the idea of an inquiry as to the weight of the evidence. In all our decisions on the subject it has been held that this court may, in equity cases, determine the weight of the evidence, and this rule has been established upon

the theory that no constitutional guaranty is impaired by a review in this court to that extent. The rule that this court should not determine the weight of the evidence in cases at law is based primarily upon the fact that there is a constitutional guaranty of trial of issues of fact by a jury, which would be encroached upon if this court undertook to determine the weight of the evidence, though the rule has been extended to law cases in which there is no constitutional guaranty. The court has merely adopted the rule, the same as has been done in other States, of leaving to the trial court the duty of determining the facts, and we see no reason why the Legislature cannot establish that rule of procedure in this court in cases where there is no guaranty of trial by jury. Such is the view of the Supreme Court of Wisconsin in construing a similar statute under constitutional provisions almost identical with the provisions of our own Constitution. *Klein* v. *Valerius,* 87 Wis. 54, 22 L. R. A. 609. The Wisconsin statute provided, in language very similar to that used in the statute now before us, that it should be the duty of the appellate court "to examine and review the evidence * * * and give judgment according to the right of the case, regardless of the decision upon questions of fact or law made by the court below according to law and equity." The Supreme Court of Wisconsin, in the case referred to above, held that the statute was applicable to cases tried by the court below and not by a jury, but that the statute was void so far as it attempted to impose upon the appellate court the duty of determining the weight of the evidence in a case decided by a jury. In disposing of the matter the court said:

"This court has always sought to review 'all questions of law or fact' properly presented for review by the record upon appeal or writ of error. It has, moreover, always sought 'to examine and review the evidence when the same is preserved by a bill of exceptions,' in a manner authorizing and calling for such examination

and review, according to the established rules of 'law and equity.' Accordingly, this court has never felt bound by the findings of the trial court, regardless of the weight of the evidence, in an equitable action, or an action tried by the court without a jury * * *.''

The court then quoted the provision of the Constitution with reference to the jurisdiction being only appellate, and then said:

''The duties of this court are confined almost wholly to an exercise of its appellate jurisdiction. The Constitution provides that 'the right of trial by jury shall remain inviolate, and shall extend to all cases at law.' * * * This court has uniformly held that this language imports that such right must remain as it existed when the Constitution was adopted.''

Similar statutes have been upheld in other States, and we find no decisions to the contrary. *Tony* v. *State*, 144 Ala. 87; *Parkinson* v. *Thompson*, 164 Ind. 609; *Christianson* v. *Farmers' Warehouse Assn.*, 5 N. D. 436; 2 R. C. L. pp. 193, 202.

The North Dakota case and the Indiana case, cited above, each furnish an interesting discussion of this question and fully sustain the conclusions we now reach on the subject. In the North Dakota case the court said:

''Appellate jurisdiction cannot create a cause. It must be first created and adjudicated by another tribunal. Those facts existing, the appellate court may exercise its jurisdiction in any form the Legislature may prescribe. The Legislature may require the appellate court to review the facts, and render final judgment. If, in so doing, it exercise some of the same functions as a court of original jurisdiction, we answer that there is neither constitutional nor legal reason why it should not.''

To this statement we must add the qualifying language that there is no reason why the Legislature cannot authorize such proceedings in an appellate court, unless

it conflicts with some other provision of the Constitution, and we agree with the Wisconsin court in the case cited, *supra,* that the provisions with reference to guaranty of trial by jury is a limitation upon the exercise of appellate jurisdiction.

Under the rule of law declared by this statute we are called on to inquire into the weight of the evidence as in equity cases. This is for the purpose of determining whether or not the judgment of the court is against the preponderance of the testimony. The case is not tried anew as if no judgment had been rendered by the lower court, for, on this appeal, the burden is upon the appellant to show that the judgment is erroneous, and, unless it is against the preponderance of the evidence, we cannot say that it is erroneous. We proceed, then, to an inquiry as to whether or not the evidence in the present case preponderates against the finding and judgment of the court.

The part of appellant's track sought to be removed and discontinued runs a distance of 1,620 feet along Greenwood Avenue from its intersection with Little Rock Avenue. Appellant has about 22 miles of trackage in the city of Fort Smith, and it is divided into sections for operating purposes. The line running out on Greenwood Avenue is known as the Little Rock Avenue line, and begins at the car-barns on Midland Boulevard, running thence along certain streets to Garrison Avenue, thence out Garrison Avenue a distance of about eight blocks, thence out Little Rock Avenue a distance of 6,720 feet to the intersection of Greenwood Avenue, and thence turns into Greenwood Avenue and runs a distance of 1,620 feet. The line does not run any farther out on Little Rock Avenue, but stops at the intersection of Greenwood Avenue, or a point referred to as the Humphreys Corner. The Greenwood Avenue line was built about twenty years ago, and it terminates at a public cemetery known as the City Cemetery. At the time of the extension of the track out Greenwood Avenue there

was a baseball park opposite the City Cemetery, and the main purpose in extending the line was to reach the ball park. The park was abandoned after two or three years, but the street-car line has been continued from that time until the present, a period of about seventeen years.

Greenwood Avenue is a portion of a public highway between the city of Fort Smith and the town of Greenwood, and the county court determined to pave it as a hard-surfaced road, both inside and out of the city. The paving of the street requires a slight change in the grade of the street-car track so as to conform to the surface of the paved street. The track along the avenue was repaired or rebuilt about the year 1910, and is now worn out to the extent that it will have to be rebuilt. It is shown by the undisputed evidence that it will cost $11,000 to rebuild the line on Greenwood Avenue with standard material, such as is used for the remainder of appellant's trackage in Fort Smith. It is also shown, and the trial court found, that the valuation of appellant's physical properties represented by the whole of the street railway line amounted to $934,540, and that the net profits amounted to $16,127.74, which is 1.715 per centum net profits on its valuation. Appellant shows in the evidence its method of arriving at the distribution of its operating expenses on the various lines, and shows that it costs about $8.25 per day to operate cars on that portion of the track extending out on Greenwood Avenue, and that the net earnings on that part of the line only amount to $2.14 per day, leaving a net loss per day of $5.85 in operating on the Greenwood Avenue line.

Appellant undertook to furnish counts, as tests at certain periods, of the number of persons embarking and debarking on and from that line during certain periods in three months, and it arrived at the cost of operating cars on that section of the line by apportionment in accordance with the total distance of the line. It is unnecessary here to repeat at length the method

by which appellant's witness arrived at this result. Suffice it to say that it was competent testimony and may be treated as establishing the proportion of expense of operating this additional line.

There is a conflict, however, in the testimony as to the amount of patronage on this line and as to the probable increase of such patronage. Appellant undertook to show by count the number of people who visited the cemetery per day, but appellees introduced other witnesses, who lived in the neighborhood, and who testified that the patronage by travel to the cemetery during the summer months was greater than during the autumn and winter months, when appellant's tests were made. The evidence shows that there are only two houses fronting on the east side of Greenwood Avenue, but that the west side of the avenue is well built up; that immediately beyond the terminus of the line there are five blocks where there are no houses fronting on the avenue, the cemetery being on one side and vacant lots on the other, but there is a collection of houses five blocks beyond the terminus. There are houses on parallel streets within easy walking distance of the car line, and the locality, as a whole, is fairly well built up as a residential section. There is testimony showing that much of this locality is reasonably accessible to the car line on Little Rock Avenue.

Appellant also introduced testimony tending to show that most of the people who live out there own automobiles. The testimony shows that the cemetery is still kept up, and that there are, on an average, about thirty burials per month. Other cemeteries have been established in other localities in the city since the line was built.

Appellees introduced witnesses who testified that the locality to which this line furnishes service had good prospects for considerable development, that it is a residential section, and that a good many sales of lots were being made. The testimony of these witnesses was suffi-

cient to show that there would be a substantial increase in the patronage on this line in the future.

Upon consideration of all the testimony, we are of the opinion that it is sufficient to support a finding that the patronage of this line will increase, not diminish. It is not an unsupported promise or anticipation of the future to say that the locality to which this line furnishes service will be built up in the near future with residences, and that the patronage will be very considerably increased. Of course, the question of the effect of the use of automobiles upon street-car service is, to some extent, problematical. This is true as to any portion of appellant's line, or the line of any other street railroad.

The question of just and reasonable compensation, or, on the other hand, of confiscation, must be considered in determining appellant's right to discontinue operation on its line. No order of the governing body of a city which results in confiscation of property, within the meaning of the law, can be upheld as a valid regulation. It does not follow, however, that a public utility, after having occupied a field or territory by permission of public authority, can restrict its sphere of operation to places of its own choosing, as against the convenience of the public, or that it can withdraw after having once established it in a given portion of a territory. The rule of justice is, we think, very aptly stated by the Supreme Court of the United States in the case of *N. Y. & Q. Gas Co.* v. *McCall,* 245 U. S. 345, as follows:

"Corporations which devote their property to a public use may not pick and choose, serving only the portions of the territory covered by their franchises which it is presently profitable for them to serve, and restricting the development of the remaining portions by leaving their inhabitants in discomfort without the service which they alone can render. To correct this disposition to serve where it is profitable and to neglect where it is not, is one of the important purposes for which these administrative commissions, with large pow-

ers, were called into existence, with an organization and with duties which peculiarly fit them for dealing with problems such as this case presents * * * *.''

That language is peculiarly applicable to a case where, as in this instance, the public utility has actually occupied a given portion of its territory and furnished service for a number of years, and then attempts to withdraw it.

There is evidence, as above stated, that appellant extended its line on Greenwood Avenue primarily for the purpose of furnishing service to patrons traveling to and from the baseball park, but the park was abandoned seventeen years ago, and appellant has continued the service, and actually rebuilt the line in the year 1910. There is not the slightest proof in the record that there has ever been any decrease in the patronage on that line, and, even though appellant established the line to meet a particular character of patronage, it did not withdraw it when that particular patronage ceased, but has furnished service to the inhabitants of that locality for the past seventeen years. There is much reason for a distinction between the construction of a line as an original project and the right to withdraw it after once constructed and put into operation. Conceding that there is no absolute obligation on the part of the utility company to continue an unprofitable line, the fact that people have been induced by the establishment of the line to build homes in that locality is a necessary part of the consideration in determining whether or not it is proper for the company to be permitted to withdraw from that part of the service. The question of expenses and profits is not the only thing to be considered. Appellant has the right, under its present status as the holder of an indeterminate permit, to withdraw altogether from the territory, but as long as it occupies the field it should not be permitted, in the language of the Supreme Court of the United States, to ''pick and choose,'' taking the part which is profitable and withdrawing from that portion which is unprofit-

able. The project must, in other words, be considered as a whole in determining whether a given rule or requirement be confiscatory. *Atl. Coast Line R. v. N. C. Corp. Comm.*, 206 U. S. 1; *Mo. Pac. R. Co. v. Kansas*, 216 U. S. 262; *Puget Sound Traction L. & P. Co. v. Reynolds*, 244 U. S. 574; *Miss. R. Comm. v. M. & O. R. Co.*, 244 U. S. 388; *Milwaukee Elec. R. & L. Co. v. State*, 252 U. S. 476; *Brooks-Scanlon Co. v. Ry. Comm. of La.*, 251 U. S. 393.

The undisputed evidence in this case shows that appellant's net earnings on its railway lines are less than two per centum on the valuation, and it must be conceded that this is not a fair return upon the investment. Any reduction of rates which would result in a reduction of net profits would obviously be confiscatory in its effect, but there is no proposal on the part of appellant to increase the rate; on the contrary, it has been freely stated in the argument that it would not be deemed advisable to increase the rate of fares above the present rate of seven cents per passenger. We are not dealing now with the question of rates. Appellant could not be compelled to maintain its service at a confiscatory rate, but, as before stated, this low rate results from the operation of the utility as a whole, and the withdrawal of service on Greenwood Avenue would not materially affect the net revenues as a whole. The cost of rebuilding and maintaining this line is almost trifling in comparison with the value of the whole system and the cost of its operation. Therefore it is but simple justice to the inhabitants of this locality to say that, because appellant is willing to operate its entire system at a grossly inadequate compensation, it cannot deny the same service to a locality where the line was established many years ago. The inhabitants and owners of property in this locality are just as much entitled to service as others similarly situated in the city who have a line already established.

It is not unworthy of notice also that the Greenwood Avenue line is not merely a lateral running off the Lit-

tle Rock Avenue line, but it is a part of that line. The Little Rock Avenue line does not extend out on that avenue any farther than the point of its intersection with Greenwood Avenue at the Humphreys Corner. Therefore the abandonment of this line will be a mere curtailment or withdrawal of a part of the main line, and, if appellant can cut off and abandon this much of the line, there is no reason why it should not continue in its progress of abandonment until it contracted its line to such a point where it would reap such profits as it desired in its operation.

Our conclusion, or at least the conclusion of a majority of the court, is that the circuit court was correct in refusing to set aside the order of the city commission.

The judgment is therefore affirmed.

Judges WOOD and HART dissent on the ground that the judgment should be reversed on the evidence.