ARKANSAS RAILROAD COMMISSION v. GRAYSONIA, NASHVILLE
& ASHDOWN RAILROAD COMPANY.

Opinion delivered June 15, 1925.

1. PUBLIC SERVICE COMMISSIONS—APPEAL FROM ORDER—DELAY.—
Under Acts 1921 p. 177, § 20, requiring the secretary of the
Railroad Commission, on an appeal from an order of the com-
mission, forthwith to file a transcript of the proceedings with
the clerk of the Pulaski Circuit Court, it was not an abuse of dis-
cretion to refuse to dismiss the appeal for delay of the secretary
in filing the transcript not caused by the appellant.

2. PUBLIC SERVICE COMMISSIONS—DELAY IN FILING TRANSCRIPT—
EVIDENCE.—Testimony held sufficient to support a finding of the
circuit court that the delay of the secretary of the Railroad Com-
mission in filing a transcript of proceedings before the com-
mission was not caused by the negligence of the appellant, and
that the delay was excusable.

3. RAILROADS—OPERATION OF BRANCH LINE.—A railroad company
which did not own a certain branch line of railroad could not
be compelled to operate it merely because its charter granted it
the potential right to acquire and operate such line, and it had
temporarily operated it under an option to purchase.

Appeal from Pulaski Circuit Court, Second Divi-
sion; *Richard M. Mann,* Judge; affirmed.

*H. W. Applegate,* Attorney General, *Brooks Hays,*
Assistant, *J. C. Pinnix* and *Utley & Hammock,* for appel-
lant.

*J. G. Sain* and *Hamilton Moses,* for appellee.

McCULLOCH, C. J. A domestic railroad corpora-
tion, known as the Memphis, Dallas & Gulf Railroad
Company, constructed and operated a line of railroad
from Ashdown, Arkansas, to Hot Springs·through the
towns of Nashville and Murfreesboro. The road was
put into operation about the year 1909, and was oper-
ated with more or less actual loss during its lifetime
until the year 1920, when it was shut down and opera-
tions ceased. There was a foreclosure proceeding insti-
tuted by bondholders of the railroad company in the
United States District Court for the Western District
of Arkansas, and on August 15, 1922, the entire prop-
erty of said railroad company was sold in sections by a

commissioner of that court.  J. K. Riffel· as trustee for certain individuals became the purchaser of three sections of the railroad—one from Ashdown to Nashville, another from Nashville to Murfreesboro, and another from Murfreesboro to Shawmut.  Those sales were confirmed by the court, and deed was executed to Riffel, dated March 30, 1923, conveying the three sections sold to him as such trustee.

In October, 1922, the appellee, Graysonia, Nashville & Ashdown Railroad Company, was incorporated under the laws of this State for the purpose, stated in the articles of incorporation, "of purchasing or otherwise acquiring that part of the said railroad running from Ashdown to Shawmut, Arkansas, * * * and for the purpose of maintaining and operating said part of said railroad, and for the purpose of purchasing or leasing any other parts of said property that will be useful or convenient for the operation of said railroad."  Some of the incorporators of this railroad are the same parties for whom Riffel made the purchase as trustee, but not all of them are the same parties.

In December, 1923, Riffel as trustee conveyed to appellee the section, or division, of said railroad from Ashdown to Nashville.  The deed described the property as "that part of the railroad from Ashdown to Nashville"—meaning a section of the Memphis, Dallas & Gulf Railroad.  Riffel as trustee also entered into contract with appellee granting an option to appellee to purchase the section of the railroad from Nashville to Murfreesboro.  Appellee at once began operation of the line between Ashdown and Nashville, and also operated for a short time under its option contract the line between Nashville and Murfreesboro, but did not complete its purchase by exercising the option because of its inability to raise the money to repair the line, and it abandoned the purchase and ceased operating the line.

The citizens of the town of Murfreesboro filed a petition with the Arkansas Railroad Commission on

January 3, 1924, praying for an order to compel appellee to repair the line of railroad between Nashville and Murfreesboro and furnish adequate freight and passenger service over the line. Notice was served on appellee and on the day set for hearing, the commission, after hearing the testimony of numerous witnesses, granted the prayer of the petition and entered an order in accordance therewith. This order was entered on January 29, 1924, and specified that it must be complied with by appellee within six months from the date thereof. On February 16, 1924, appellee filed with the Railroad Commission its prayer for an appeal, which was granted, but the transcript was not filed in the office of the circuit clerk of Pulaski County until a day in November, 1924. The circuit court made an order restraining the commission from proceeding with the enforcement of its order against appellee during the pendency of the proceedings in the circuit court. The Railroad Commission and the original petitioners appeared in circuit court and filed a motion to dismiss the appeal on the ground that it had not been filed within the time specified by statute. The court overruled the motion and on final hearing rendered a judgment setting aside the order of the Railroad Commission and dismissing the original petition. An appeal has been duly prosecuted to this court.

Section 20 of act No. 124 of the General Assembly of 1921 (General Acts 1921, p. 177) governing appeals from the Arkansas Railroad Commission reads as follows:

"Within thirty days after the entry on the record of the said Arkansas Railroad Commission of any order made by it, any party aggrieved may file a written motion with any member of such commission, or with the secretary thereof, praying for appeal from such order to the circuit court of Pulaski County; and thereupon said appeal shall be automatically deemed as granted as a matter of right without any further order.

The secretary of said commission shall then at once make full and complete transcript of all proceedings had before such commission in such matter, and of all evidence before it in such matter, including all files therein, and deposit same forthwith in the office of the clerk of said circuit court, which appeal shall be given preference over all other cases on the docket of said circuit court. Upon the filing of the aforesaid motion of said appeal and at any time thereafter the said circuit court or its circuit judge shall have the right to issue such temporary or preliminary orders as to it or him may seem proper until final decree is rendered. The said circuit court shall thereupon review said order upon the record presented as aforesaid in the case and enter its finding and order thereon and cause to be certified forthwith to such commission the said order, therein directing that action be taken by said commission in conformity therewith, unless an appeal from said order to the Supreme Court of this State shall be taken within the time hereinafter specified, and in case of such appeal to await further orders of said circuit court.''

It is contended by counsel for appellants that the court erred in overruling the motion to dismiss the appeal, on the ground that there was inexcusable delay in filing the transcript. There was oral testimony introduced before the court on the hearing of appellant's motion to dismiss the appeal. It appears from the testimony that the secretary of the Railroad Commission made out the transcript on March 5, 1924, and forwarded the same to one of appellee's attorneys at Nashville for the purpose of having the latter examine the transcript. The attorney received the transcript and held it for some time in conferring with the officers concerning the payment of court fees. The attorney testified that he was not aware of the fact that this was the original transcript which was to be filed by the secretary of the commission with the circuit clerk,

but thought it was a copy thereof, and that soon after he was apprised of the fact that it was the original, he returned it to the secretary to file. There is some conflict in the testimony on this point, but we treat it as being settled in favor of the findings of the trial court. It will be observed that the statute makes it the duty of the secretary of the Railroad Commission to file the transcript in the office of the clerk of the circuit court, and that the jurisdiction of the circuit court attaches from the time of the filing of the motion for appeal with the commission. In the case of *Van Buren Water Co.* v. *Van Buren,* 152 Ark. 83, we decided that, where there was a delay beyond the limit fixed by the statute in filing transcripts on appeal from the Railroad Commission, there was no abuse of the court's discretion in refusing to dismiss the appeal, if it was found that the delay was not caused by the fault of the appellant. We cannot say that the testimony was insufficient to support the finding of the circuit court in this case, that the delay was not caused by negligence of appellee's counsel, or that the delay was excusable.

The main issue was heard by the trial court on testimony adduced before the Railroad Commission, a transcript of which was before the court. There were numerous witnesses introduced by the original petitioners, who testified concerning the volume of business over the line in and out of Murfreesboro and the prospects for rapid future increase of the business. Appellee introduced testimony from its records showing that that portion of the line had always been operated at a loss. There was no proof, however, that the operation of the whole line from Ashdown to Murfreesboro would result in a loss. The proof was undisputed, however, that the railroad line between Nashville and Murfreesboro was badly out of repair, and that it would cost at least $40,000 to repair the roadbed, ties and bridges, so that trains could be safely operated. Appellee also proved by its president repeated

efforts to secure funds with which to consummate the purchase of this line under the option contract with Riffel and the inability to raise the money, and that on that account the option to purchase was never consummated, hence the abandonment of the line.

Counsel for appellants invoke the doctrine that where a corporation takes a franchise and begins operation under it there can be no abandonment of a portion of the franchise merely because it proves unprofitable. In other words, counsel rely on the doctrine announced by this court and the Supreme Court of the United States that where a public utility, after having taken advantage of its charter to operate a line, cannot "pick and choose" —retaining the profitable part and discarding and abandoning the unprofitable part. *Fort Smith Light & Traction Co.* v. *Bourland,* 160 Ark. 1, s. c. 267 U. S. 330. That doctrine is not applicable, however, to a case where it is sought to compel a public utility to operate a line over which the charter rights have not been extended merely because there is a potential right granted in the charter. The proof in the case shows that appellee never acquired, either by purchase or lease, the line of railroad from Nashville to Murfreesboro. It acquired only an option to purchase, which was never exercised. The doctrine referred to above cannot be invoked to compel a public utility to acquire a line, but merely to compel it to continue operation of a line which it has once acquired and undertaken to operate. Appellee's charter does not require it to operate the entire line of railroad specified therein. It merely grants a franchise to own and operate such portions of the old railroad as might be acquired "by purchase or otherwise." If appellee decided not to purchase the additional section of the road, it could not be compelled to do so. The question whether its failure to do so would constitute grounds for forfeiting the charter is not before us. The evidence in the case is not altogether clear as to why appellee commenced

operation of this line of the railroad without finally exercising its option to purchase, but it is fairly inferable that it was a mere temporary occupancy in anticipation of the ability to make the purchase, but without committing appellee to an exercise of the option. The option contract was not introduced in the record, but Mr. Conway, the president of appellee company, was permitted to testify without objection that the contract was a mere option to purchase, and that after diligent effort the company was unable to find the moneys with which to make the purchase under the option.

Our conclusion is that, under the evidence introduced in the case to the effect that appellee did not own this line of railroad, either by purchase or lease, it would not be compelled to acquire ownership for the purpose of operating the road.

The judgment of the circuit court is therefore affirmed.