ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY *v.* NORRIS.

Opinion delivered January 21, 1929.

*E. T. Miller, E. L. Westbrooke, Jr.,* and *E. L. Westbrooke,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

KIRBY, J. This appeal comes from a judgment or order of the Pulaski Circuit Court, affirming an order of the Arkansas Railroad Commission requiring the appellant railway company to reinstate its passenger trains Nos. 101 and 102 in operation on its road between the cities of Jonesboro and Mammoth Spring, Arkansas, upon substantially the same schedule as said trains were operated before being discontinued, or to put into operation between said stations a motor-car of sufficient size to accommodate the traveling public and take care of perishable freight and express traffic in the affected territory.

There is a presumption that the rates fixed by the Railroad Commission are reasonable and orders made by it *prima facie* correct, and this presumption in its favor yields only to the probative force of the evidence in the record, the burden being upon the appellant carrier to show that the order or judgment is erroneous.

*Ft. Smith Light & Traction Co.* v. *Bourland,* 160 Ark.
1, 254 S. W. 481; *Clear Creek Oil & Gas Co.* v. *Ft. Smith
Spelter Co.,* 161 Ark. 12, 255 S. W. 903. In the latter
case the court said:

"Upon appeal to this court we are called upon to
inquire into the weight of the evidence for the purpose
of determining whether or not the judgment of the cir-
cuit court is against the preponderance of the evidence.
In other words, on appeal the findings of fact by the
circuit court are allowed to stand unless they are against
the preponderance of the evidence when tested by the
presumption in favor of the findings of the commission,
as outlined above."

The petitioners were residents of the towns or sta-
tions of Williford, Imboden, Ravenden, Sedgwick, Black
Rock, Bono and Portia, and seven witnesses from three
of the places, Black Rock, Portia and Imboden, testified
in support of the petitions, and their testimony conduced
to prove the allegations of the petitions and support the
findings of the commission. Black Rock is two miles
north of Portia, and Imboden is nine miles north of
Black Rock, and it developed that the necessity for cross-
ing Black River on a toll bridge near Black Rock, in
travel on the State highway, influenced somewhat the
opinion of witnesses of the necessity for and convenience
of additional train service.

Cornatzer, passenger traffic manager for the rail-
road, testified that, because of the travel or traffic over
the hard-surface State roads, the business of the railroad
had steadily decreased till it reached a point where each
of the trains taken off lost approximately $1,700 a month.
Said further: "Prior to construction of the hard roads
and institution of bus service, trains 101 and 102 were
remunerative. Trucks and privately owned automobiles
have gradually depleted the earnings of the trains, and
they are not paying. Our heavy decrease in local pas-
senger earnings started on completion of the hard-sur-
faced roads, which in turn made greater the travel by
automobile, and, if there is sufficient business to justify

it, the bus lines immediately start operation; that is typical of the general situation as to local travel not only on the Frisco, but on the other lines. The bus lines run more frequently than the trains can run, and they make lower rates than the railroads are allowed to make; the trucks operate at lower rates and deliver from business house to business house. The shipment of cantaloupes is by refrigerator cars; if they have to go any distance they have to be refrigerated, and they and watermelons are shipped by freight. Some strawberries move by express, but the season is short. May is a typical month. The loss in operating these trains, 101 and 102, is $1,776.70.'' Made no statement showing operating expenses and revenues for the year. Stated also that if fast through trains should be required to stop it would convert them into local trains and prevent their carrying long distance competitive traffic, which would go to competitors.

The Railroad Commission made findings that appellant company had wrongfully, on about the 20th day of June, 1926, and without notice to the commission, and in violation of § 7 of act 124 of the General Assembly of 1921, discontinued the operation of its trains Nos. 101 and 102, theretofore operated between the cities of Memphis, Tennessee, and Thayer, Missouri, serving the various towns between Jonesboro and Mammoth Spring, Arkansas; that the appellant company was not operating enough trains to reasonably accommodate the traffic, passenger, freight and express, between the said Arkansas towns; that the traveling public was greatly inconvenienced on account of it, and that the exhibit introduced by Cornatzer in his testimony showed a deficit in revenue for passenger traffic only for the operation of trains 101 and 102; that the time for which the deficit was shown travel was the lowest during the year, and that it believed statistics covering the operation of said trains for the period of one year would show a substantial gain rather than a deficit in operation; that respondent did not offer to furnish the commission with the amount

of revenue derived from express and freight handled on such trains, which, it was believed, would overcome the deficit in the operation shown by the exhibit made.

We are unable to say, after careful examination of the record, that the findings of the circuit court, which approved and' affirmed the findings and order of the Railroad Commission, are against the preponderance of the testimony, when tested by the presumption in favor of the findings of the commission, and the judgment must be affirmed. It is so ordered.