CHAMBER OF COMMERCE CITY OF HOT SPRINGS *v.* CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY.

4-9777    249 S. W. 2d 8

Opinion delivered May 26, 1952.

*McMath, Whittington, Leatherman & Schoenfeld,* for appellant.

*Wright, Harrison, Lindsey & Upton,* for appellee.

WARD, J. This appeal challenges the order of the Arkansas Public Service Commission granting appellee permission to discontinue its passenger train No. 151 running from Little Rock to Hot Springs and train No.

152 returning to Little Rock. The Commission's ruling was appealed to the Circuit Court of Pulaski County and there affirmed, hence this appeal.

The determination of the Commission was based on questions of fact. It is our duty to try the cause *de novo* but not to reverse the Commission unless its findings are contrary to the weight of the evidence. *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604.

On March 22, 1951, appellee, which had for many years operated the train service mentioned above, petitioned the Commission for authority to discontinue the service. The allegations in the petition were to the effect that train No. 151 leaves Little Rock at 11:45 a. m. and arrives at Hot Springs at 1:20 p. m., and train No. 152 leaves Hot Springs at 2:45 p. m. and arrives at Little Rock at 4:20 p. m.; for more than two years said trains have operated at a heavy loss with no reasonable prospect for improvement in the foreseeable future; the only scheduled intermediate stop is Benton which is served by adequate transportation facilities; Hot Springs is more than adequately served by other transportation facilities, and the public convenience and necessity would not be affected by the discontinuance of said trains; and the mail and express service would likewise not be affected.

The City of Little Rock and the City of Hot Springs entered formal protests, but only the latter has appealed. The evidence introduced at the hearing before the Commission is substantially as set out below.

Witnesses who were employees of appellee testified: Trains No. 151 and No. 152 operated on the schedule mentioned above, but stopped on signal for fare-paying passengers at Bauxite, Butterfield and Jones Mill; the Rock Island Motor Transit Company, a subsidiary of appellee, could handle the small amount of mail and express; with the exception of one year, there has been a decrease in passenger revenues in spite of increases in rates granted for railroads generally since the end of world War II, and the number of appellee's passengers is also decreasing, caused by the increasing number of automobiles since the war and by competition by buses and airplanes. Ar-

kansas Trailways, Continental, and Missouri Pacific Trailways operate daily a total of 18 trips each way between Little Rock and Hot Springs, and there is also one air flight from Little Rock to Hot Springs and two flights from Hot Springs to Little Rock each day. The Missouri Pacific Railroad's train No. 219 leaves Little Rock each day at 11:20 a. m., arriving at Hot Springs at 12:45 p. m., and its train No. 220 leaves Hot Springs each day at 1:45 p. m., arriving at Little Rock at 3:00 p. m.; and said trains carry a sleeper to and from Chicago. Appellee's trains also carry a sleeper for connection at Memphis, but this connection is frequently not made. Appellee has no passenger trains on this route other than the ones mentioned above. Company records relative to the operation of the two trains between Little Rock and Hot Springs for the years 1949 and 1950 show [broken down in detail] the following:

|  | 1949 | 1950 |
|---|---|---|
| Total Revenues | $34,347.90 | $24,449.63 |
| Total Expenses | 67,322.12 | 67,043.22 |
| Net Loss | 32,974.22 | 42,594.09 |
| Average Revenue per Train Mile | .852 | .584 |
| Average Expense per Train Mile | 1.670 | 1.601 |
| Net Loss per Train Mile | .818 | 1.017 |

The above figures on total expenditures do not include $4,747.08 paid by appellee to the Arkansas Motor Coaches for transportation of passengers from Memphis to Hot Springs who failed to make train connections at Memphis during the period from November 1st, 1949, to February 28th, 1951; and neither do the expense figures include anything for property taxes, maintenance and replacement of the track and right-of-way, or supervisory salaries.

In opposition to the above, evidence on behalf of appellant was substantially as follows: The service sought to be discontinued is necessary to the convenience of the Hot Springs community; that Hot Springs is a health resort, dependent almost wholly on its visiting popula-

tion, and drawing 55 per cent of its patronage from the area served by appellee; that the many hotels and motels in Hot Springs would suffer by such lessening of rail service; that in the immediate future large industries will construct factories near Hot Springs in the Jones Mill area which is served only by the Rock Island; that many visitors to Hot Springs come there for treatment and therefore cannot travel by auto or bus; that the train services of the Missouri Pacific do not parallel that of the Rock Island although its service is first class, and many ill persons coming to Hot Springs are unable to transfer from one carrier to another. It was also stated that with a war coming on there is a possibility of gasoline, tire and auto rationing; and that in 1950 approximately 10,000 more people came to Hot Springs by rail than in 1940. It was shown however that the number of rail passengers in 1950 was approximately 15,000 less than in 1949, 32,000 less than in 1948, 36,000 less than in 1947, 125,000 less than in 1946, 90,000 less than in 1945, and also less than in 1942 and 1943.

1. *Expense of Operation.*—Appellant insists that certain items of expense should not have been charged by appellee to its cost of operating in 1950, pointing out $13,689.55 for maintenance of equipment, $12,870.68 for train fuel, $399.21 for water, lubricants, and supplies for steam locomotives, and $4,945.14 for injuries to persons. Some of these expenses, it says, would be eliminated if diesel equipment were installed. This might be true, but we are furnished with no figures to show how much if any saving would be thus effected. Also it is pointed out by appellee that modern equipment is already in use. The item of personal injury expense may be less in future years, but that is problematical. In all events it must be concluded that appellee has been operating at considerable loss and will continue to do so under the same situation.

2. *Method of Accounting.* It is next contended that appellee should not be permitted to discontinue said trains No. 151 and No. 152 without showing a loss after an accounting of revenues and expenses for freight

hauled and after an accounting of its operations over its entire system. In support, appellant cites *Ft. Smith Light and Traction Co.* v. *Bourland,* 160 Ark. 1, 254 S. W. 481; *Ft. Smith Light & Traction Co.* v. *Ward,* 169 Ark. 519, 275 S. W. 757; *Railroad Com.* v. *Saline River Ry. Co.,* 119 Ark. 239, 177 S. W. 896; and *St. Louis S. F. Ry. Co.* v. *Norris,* 178 Ark. 940, 12 S. W. 2d 915. In the last cited case the decision rested principally on the fact that appellant made only a partial accounting of its operations, and the other cases involved an attempt to abandon the track or lines. No such abandonment of appellee's track is here involved.

The rule applicable here is announced in *Missouri-Kansas-Texas R. Co.* v. *State of Oklahoma,* 189 Okla. 685, 119 P. 2d 835. There the railroad company sought to discontinue two passenger trains operating between Oklahoma City and Parsons, Kansas. The following excerpts from the opinion will explain the rule:

". . . The expense to the company in furnishing the facilities and the relative benefit to the public is the deciding factor.

"In the performance of an absolute duty by the railway company, the question of expense is not to be considered, but where the duty sought to be enforced is one of additional convenience rather than necessity, the question of expense to the company and relative benefit to the public is the deciding factor and may not be disregarded.

"We are aware of no decisions that recognize the necessity of examining into all revenues of a carrier in an effort to determine whether an order requiring it to furnish facilities in addition to those reasonably necessary to meet the public demands would be arbitrary and unreasonable, and a deprivation of its property without due process of law."

The rule announced above was reaffirmed in *St. Louis-San Francisco R. Co.* v. *State of Oklahoma,* 204 Okla. 432, 230 P. 2d 709, decided in 1950. If the question before us were the abandonment of appellee's line or if it were a

question of necessity, the accounting system proposed by appellant would be correct, but where it is a question of public convenience as it is here we consider the accounting made by appellee to be proper and sufficient.

3. *Changed Conditions.* The expansion and improvement of highways and the increase of passenger automobiles during the past thirty or forty years have caused a drain on railroad passenger revenues and have brought about a condition that cannot be overlooked by the courts and fact-finding agencies in the consideration of questions such as are presented here. This fact is impressively stated in the opinion of the Oklahoma case last cited, from which we quote the following:

"That such decline in patronage is not local but general is reflected from the fact that in 1916 the railroads throughout the United States handled 97.98 per cent of the passenger miles in this country while in 1941 they handled only 9.39 per cent of the passenger miles (Civilian War Transport—a record of the control of domestic operations—Office of Defense Transportation —published May 1, 1948). And, bearing upon the cause of such decline, in 1914 there were only 11,954 miles of improved highways in the United States while in 1946 there were 349,786 miles of improved highways. In 1915 there was an average of over forty persons for each motor vehicle registered while in 1947 there was an average of only 3.8 persons for each motor vehicle registered in the United States."

In our opinion the finding by the Commission [approved by the circuit court] that the discontinuance of appellee's two trains will not materially affect the public necessity and convenience of the people of Hot Springs is not contrary to the weight of the evidence.

4. *Future Service.* Appellant's argument that this service will be needed later, due to expected industrial expansion close by and in view of the possibility of rationing tires, gasoline, and automobiles because of the threat of war, is somewhat persuasive but still speculative. If and when these possibilities become realities

appellant will have its remedy of petitioning the Commission to reinstate the service here deleted.

Affirmed.