MISSOURI PACIFIC TRANSPORTATION COMPANY *v.*
INTER CITY TRANSIT COMPANY.

4-8958                                             224 S. W. 2d 372

Opinion delivered November 21, 1949.

*L. M. Crouch, Jr., Thomas Harper, Harvey G. Combs, Thos. B. Pryor, Jr.,* and *Henry Donham,* for appellant.

*James T. Gooch* and *Milton McLees,* for appellee.

LEFLAR, J. Inter City Transit Company (hereinafter called Inter City) has for some years been operating as a common carrier of passengers, mail, baggage, newspapers and light express over U. S. highways 64 and 65 between Little Rock and Morrilton, serving those cities and communities between them. This operation was under permits granted by the Public Service Commission in 1941, 1942 and 1943, which permits were subject to various limitations both as to the time during which they should continue and the character of service authorized by them.

On April 29, 1948, Inter City filed a new application, the one now in controversy, for a certificate of public convenience and necessity authorizing it to operate between Little Rock and Fort Smith over U. S. highways 64 and 65 and between Russellville and Fort Smith over State highways 7 and 22. By amendment the application prescribed ''closed door'' operation over certain portions of the routes. Protests were filed by Missouri

Pacific Transportation Company (hereinafter called Missouri Pacific), by Crown Coach Company (hereinafter called Crown) and by various others; though Missouri Pacific and Crown represent the only protestants involved in this appeal. Missouri Pacific operates bus lines over the identical routes covered by Inter City's application, with numerous schedules in each direction daily. Crown operates bus lines between Little Rock and Fort Smith on State highway 10, a parallel route, also between Alma and Fort Smith as part of its Fort Smith-Joplin service. Crown's operation would compete with the transportation offered by Inter City's application only on through service between Little Rock and Fort Smith and on U. S. highway 64 between Fort Smith and Alma. Missouri Pacific would compete with all aspects of the service offered by Inter City's application.

At the hearing before the Public Service Commission, Inter City produced 119 witnesses in support of its application, and protestants offered the testimony of some 157 witnesses. The transcript before this Court is some 1,100 pages in length. Most of the applicant's witnesses testified as to the inadequacy of present passenger transportation service for local travelers between the cities which lie between Little Rock and Fort Smith on highways 64, 65 and 22. These witnesses testified that buses now rendering this local service were often so crowded that passengers were required to stand in the aisles, that buses already full often failed to pick up would-be passengers standing beside the highway or waiting in small communities, and that service was particularly poor at certain peak periods in the early morning and late afternoon when students and teachers were going to and coming from school and workers were going to and coming from their places of employment. The testimony tended to show that the through schedules maintained by Missouri Pacific, numerous though they were, were not (and possibly could not be) geared to the demands of this peak-period local traffic. Such testimony was given, for example, as to the service from Russellville to Little Rock, from Pottsville to Russellville, from

Atkins to Conway, from Morrilton to Russellville, from Conway to Morrilton, from Menifee to nearby towns, from Blackwell to Conway and other towns, from Conway to Dardanelle, from Morrilton to Little Rock, from Piney to nearby towns, and similarly as to travel to and from Clarksville, Knoxville, Lamar, London, Coal Hill, Hartman, Mulberry, Dyer, Paris, Delaware, Alma, Dardanelle, Charleston, Ratcliff, Subiaco, Branch and other communities. These were located all along those parts of highways 64, 65 and 22 covered by Inter City's application. The testimony just mentioned constitutes by no means an exhaustive list of the evidence offered on the applicant's behalf; it is merely illustrative. Missouri Pacific offered in evidence the testimony of many witnesses to the effect that its service along the contested routes was either excellent or adequate. Numerous exhibits were put in evidence by all parties. Crown gave convincing evidence of the excellence of its service along highway 10.

The Commission's findings of fact based on this evidence were as follows:

"As stated, numerous witnesses appeared in support of and in opposition to the proposed operation. It is noted, however, that no public witnesses from Fort Smith, Little Rock or North Little Rock appeared in support of the application. Applicant's witnesses were primarily concerned in securing additional service which would enable them to arrive at and depart from points along the proposed route at times coinciding with their hours of work or school. In many instances schedules presently being operated do not afford residents along the proposed routes the opportunity of using public transportation. For example, a person living in Paris who is employed in Fort Smith, working from 9:00 a. m. until 5:00 p. m. would have to leave Paris at 6:50 a. m. arriving in Fort Smith at 8:10 a. m. He would have to wait in Fort Smith until 7:15 p. m. before he could leave and arrive in Paris at 8:27 p. m. The same situation, with variations, exists at most points now served by protestants.

"The record shows, and it should be borne in mind, that protestant, because of its extensive operations, is forced to arrange schedules to connect at Little Rock or Fort Smith with its own or those of its connecting carriers. This procedure is generally accepted as prudent operating practice on the part of large carriers because it affords the necessary convenience to the long distance traveler of short lay-overs; however, it can be readily seen, and we cannot ignore the fact that such method of arranging operating schedules cannot possibly take into consideration the necessity or convenience of the worker or student whose patronage of a public transportation system is almost solely limited to a distance of rarely in excess of thirty (30) miles. Evidence introduced by applicant herein is almost entirely limited to the needs and convenience of the public residing along the proposed routes which requires a service of local or interurban character."

On the basis of these findings of fact the Commission reached the following conclusions:

"(a)  The applicant is fit, willing and able, financially and otherwise, to conduct the operations herein proposed.

"(b)  The present and future public convenience and necessity require the type of service as proposed by this applicant.

"(c)  The granting of this application, subject to the amendments hereinbefore set out, will not materially affect the financial position of protestants herein.

"(d)  The certificate to be granted should be restricted against handling traffic originating in Little Rock, North Little Rock destined to Fort Smith and, in the reverse direction, against traffic originating in Fort Smith destined to Little Rock and North Little Rock."

The order entered by the Commission authorized Inter City to operate in accordance with its application over highways 64, 65, 7 and 22, with closed doors between certain towns as specified in the amended application,

and with the added limitation, in accordance with item (d) in the conclusions just quoted:

"(c)   No passengers originating in Fort Smith, Arkansas, destined to Little Rock and/or North Little Rock, Arkansas, or originating in Little Rock or North Little Rock and destined to Fort Smith, Arkansas, may be handled by Inter City Transit Company."

The permit granted was to supersede the authority given to Inter City by all prior permits, and was thereafter to be the sole permit under which Inter City would operate.

On appeal by the protestants to the Circuit Court, the Commission's order was affirmed with one change. That change appears from the following paragraph in the Circuit Court's judgment:

"The Court, upon review, finds from the facts and circumstances contained in the record that the certificate to be granted appellee should contain an additional limitation to the effect that, should a future showing be made that the continued operation of appellee over the routes in issue would entail a destructive rather than a healthy competition, and that public convenience and necessity would be best served by operation of only one carrier over such routes, the Commission might cancel appellee's certificate, and, in determining whether this should be done the fact that appellant pioneered the route would be a factor in the situation to be considered by the Commission."

The limitation contained in the quoted paragraph of the judgment has been approved by this Court in *Southwestern Greyhound Lines, Inc.,* v. *Missouri Pacific Transp. Co.,* 211 Ark. 295, 200 S. W. 2d 772, and is clearly a proper one. Inter City does not now appeal from its inclusion in the permit.

Missouri Pacific and Crown, and other interests represented by Missouri Pacific, appeal from the judgment of the Circuit Court. This Court has quite recently, in *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604, decided on October 17, 1949, had occasion to restate the

proper scope of judicial review of fact findings of the Arkansas Public Service Commission. That case sets out our rule that the *de novo* review prescribed by the governing statute, Ark. Stats. (1947), §§ 73-133 and 73-134, is similar to that employed by this Court in chancery appeals. Accordingly it was concluded that "This Court's proper task, in the light of this state of the law, is to inquire whether the determination of the Commission was contrary to the weight of the evidence."

The Commission's findings of fact have already been quoted herein. They were to the effect that (1) there is no proved inadequacy of present service nor public need for additional service for through traffic between Fort Smith and Little Rock or North Little Rock, and (2) there is inadequacy in the present service and a public need for additional service of a local or interurban character along the highways covered by the application.[1] The evidence on Inter City's behalf, summarized earlier in this opinion, amply supports these findings of fact by the Commission, and we cannot say that they are contrary to the weight of the evidence.

Whether the permit granted by the Commission to Inter City, to operate in accordance with the application, is fully responsive to and in keeping with the fact findings just summarized is a more difficult question. A mere addition of more through schedules between Little Rock and Fort Smith will scarcely meet the needs recited in the findings of fact. Those needs appear all along the named highways at about the same time, the peak periods in the morning when children are going to school and adults are going to work and in the afternoon when school is out and work is ending for the day. A schedule leaving Little Rock at a time when it might care for such peak period traffic, perhaps from Little Rock to Morrilton, would travel the remaining two-thirds of its journey to Fort Smith at hours when present services are apparently adequate. The initiation by Inter City of a half dozen such runs in each direction during each 24-hour period would fail by far to meet the specific needs, and

---

[1] See *Santee* v. *Brady*, 209 Ark. 224, 232, 189 S. W. 2d 907, 911.

would increase unjustifiably the service available at times when need for it has not been shown to exist. Perhaps the service needed can be rendered through "turn-around schedules," whereby each of several buses might at the same time run round trips on one-fourth or one-fifth, for example, of the entire route, the whole fleet of buses thus covering the whole route in both directions during each peak period, and making connections with each other at their turn-around points. It may be that this would be too difficult an operation to schedule. This Court cannot and does not undertake to say. That is the sort of thing that may properly be referred to the Public Service Commission, an agency set up as expert in this special field, with experience and facilities appropriate to the solution of such problems as this. Our conclusion is that the case must be returned to the Commission with directions to modify the permit by requiring Inter City to submit and maintain schedules which will substantially meet the needs the Commission has found to exist and which will not to a substantial extent compete with Missouri Pacific's service in aspects as to which need has not been found to exist.[2]

Crown has asked that the wording of the Commission's restriction against the handling by Inter City of through passengers between Little Rock and Fort Smith, previously quoted herein, be changed to read: "No passengers originating in or passing through Fort Smith, Arkansas, and destined to Little Rock and/or North Little Rock, Arkansas, or beyond, or originating in or passing through Little Rock or North Little Rock, Arkansas, and destined to Fort Smith, Arkansas, or beyond, may be handled by Inter City Transit Company." Crown

[2] This conclusion is supported by a long line of decisions of this Court, including *Mo. Pac. R. Co.* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644; *Potashnick Truck Service, Inc.,* v. *Mo. and Ark. Transp. Co.,* 203 Ark. 506, 157 S. W. 2d 512; *Taylor* v. *Black Motor Lines,* 204 Ark. 1, 160 S. W. 2d 859; *Potashnick Truck System* v. *Fikes,* 204 Ark. 924, 165 S. W. 2d 615; *Mo. Pac. Transp. Co.* v. *Gray,* 205 Ark. 62, 167 S. W. 2d 636; *Santee* v. *Brady,* 209 Ark. 224, 189 S. W. 2d 907; *Schulte* v. *Southern Bus Lines,* 211 Ark. 200, 199 S. W. 2d 742; *Southwestern Greyhound Lines* v. *Mo. Pac. Transp. Co.,* 211 Ark. 295, 200 S. W. 2d 772; *Arkansas Express, Inc.,* v. *Columbia Motor Transp. Co.,* 212 Ark. 1, 205 S. W. 2d 716; *Arkansas Motor Freight Lines* v. *Batesville Truck Line,* 214 Ark. 448, 216 S. W. 2d 857; *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604, decided October 17, 1949.

also asks that there be added to the order a further paragraph, along the same lines, as follows: "No passengers originating in or passing through Alma, Arkansas, and destined to Little Rock, Arkansas, or beyond or originating in or passing through Little Rock, Arkansas, and destined to Alma, Arkansas, or beyond, may be handled by Inter City Transit Company."

The effect of the first of these changes would be to correct what may have been merely an oversight by the Commission in defining through passengers. It would, for example, prevent Inter City from competing with either Crown or Missouri Pacific for passengers traveling from Tulsa through Fort Smith to Little Rock or beyond, as well as for passengers whose whole trip is limited to the Little Rock-Fort Smith journey. There is no evidence in the record supporting need for additional schedules for any through passengers, whether their trips are limited to the Fort Smith-Little Rock mileage or are longer. It is not reasonable to say that Inter City should be forbidden to carry a passenger who is going from Fort Smith to Little Rock only, but should be allowed to carry one who is going on from Little Rock to Pine Bluff. As far as the service Inter City wishes to offer is concerned both passengers are in the same category. The phrasing proposed by Crown is more in keeping with the Commission's finding of fact and should be substituted as requested. Similarly, there is a total absence of evidence in the record showing need for additional service for through passengers between Alma and Little Rock, and the paragraph just quoted relating to such service should be incorporated in the order.

Crown has also asked that the order provide that "No passengers shall be handled between Fort Smith, Arkansas, and Alma, Arkansas, or any intermediate points, by Inter City Transit Company." This we cannot require. There is evidence in the record showing an inadequacy in local service in and out of Alma similar to the inadequacy in local service shown elsewhere along highways 64, 65 and 22. We cannot say that the Commis-

sion's finding of need for this local service is contrary to the weight of the evidence.

The order of the Public Service Commission is approved, subject to the modifications required by this opinion, and the judgment of the Circuit Court is modified and the case remanded to the Circuit Court, to be by it sent back to the Commission for action in accordance herewith.