Boyd *v.* The Arkansas Motor Freight Lines, Inc., *et al.*

5-180                                    262 S. W. 2d 282

Opinion delivered November 9, 1953.

Rehearing denied December 14, 1953.

*Chas. C. Wine,* for appellant.

*Ned Stewart, Stanley P. Clay, Leroy Hallman, William J. Smith* and *Thomas Harper,* for appellee.

Griffin Smith, Chief Justice. Public Service Commission issued its certificate of convenience and necessity to S. C. Boyd, enlarging his intrastate rights. Circuit court reversed and we affirm its judgment.

For eleven months prior to the commission's action Boyd had operated intrastate as Texarkana-Nashville Motor Freight Lines, carrying general commodities from Texarkana to Hope, and from Texarkana to Nashville and Lockesburg. Certain government consignments are

the objects of competitive efforts. Explosives, or the ingredients or materials requisite to the manufactured product, move from DeSoto, Kansas, to the Shumaker Ordnance Plant near Camden, Ark. A witness supporting Boyd's application testified that recent shipments involved eleven million pounds, but the routing was through Texas and Louisiana, with mileage substantially in excess of what the haul would be if DeQueen should be used as a gateway.

The only witness who verified Boyd's contentions touching service necessities was M. J. Sears, president of Luper Transportation Company of Tulsa. He estimated that with routing of the supplies through DeQueen a saving of $135 for a round trip would be effectuated. But Sears' idea was to interchange business with Boyd. He was permitted to testify that protesting carriers would not sustain loss if the certificate should be issued—this for the reason that the government's policy was to apportion or equalize transportation patronage among the qualified truck lines. The witness was morally certain of this result because his company kept a representative in Washington whose business it was to relay information. This agent had formerly been ''connected with the defense department.''

Boyd petitioned for the right to utilize Highway No. 71 from Lockesburg to DeQueen where the interchange with Sears' company (Luper Transportation) would take place. From DeQueen the routes would be 71 to Lockesburg, 24 to Nashville, 4 to Hope, 67 to Prescott, 24 to Camden, and 79 to the ordnance plant. A highway map shows this to be approximately 120 miles, not including the distance from Camden to the government plant.

DeSoto, Kansas, is about 45 miles southwest of Kansas City. It is not shown that Sears' company has authority to transport explosives between those points. But the witness, Sears, insisted that if intrastate rights should be extended to Boyd, Luper Transportation, by connection with Boyd at DeQueen, would have a more direct route to Camden, thus eliminating three or four other

operators who presently participate in the business. He assumed that Arkansas Motors came down its certificated route—a relatively direct course south from Kansas City over 71 into this state, then to Camden.

The evidence clearly shows that Luper's interest in the intrastate certificate was equal to if not greater than Boyd's. Sears intended to lease his company's trailers to Boyd when interstate shipments reached DeQueen. There would be no exchange of facilities—a practice common among carriers. To use Sears' own language in regard to Boyd, "I expect him to make a little money out of it."

There was no testimony that shipments of explosives originated at DeQueen or at any point along the routes mentioned in the application. Outgoing tonnage from the Shumaker plant went to the west coast. Whether other lines now participating in the Kansas City-to-Camden shipments would be taken care of through government recognition of their needs for business, said Sears, would depend upon "how strong their people are in Washington." Luper had asked the Interstate Commerce Commission for authority to enter Shumaker on a temporary basis and the certificate had been denied.

This question was asked of Sears: "You are only interested in seeing [Boyd] get his application to go from DeQueen to Shumaker to supply a deficiency your company now has?" A. "I think he would make some money out of the deal." Q. "But that is your interest, isn't it?" A. "Sure it is my interest."

The record is silent on the question of who would profit through the reduced mileage mentioned by Boyd; but ordinarily in interstate transactions the rate between two points is constant irrespective of the route that is utilized. If this be true, the saving here would be to Luper, with Boyd participating incidentally.

The trial court held that under admissions that the business would be exclusively interstate, Public Service Commission was without jurisdiction to entertain the

application. It also held that there was no showing of convenience and necessity.

Because we agree with the last proposition it is unnecessary to explore the jurisdictional field.

In *Missouri Pacific Railroad Company* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644, we took note of transportation facilities afforded by the railroad company, the issue being whether a bus line should be permitted to compete. The opinion, written by Judge Frank G. Smith, quoted from Pond on the Law of Public Utilities, v. 3, § 775, where it is said that the prime object and real purpose of commission control is to secure adequate sustained service for the public at the least possible cost, and to protect and preserve investments already made for this purpose, for ''Experience has demonstrated beyond any question that competition among natural monopolies is wasteful economically and results finally in insufficient and unsatisfactory service and extravagant rates.''

Boyd's testimony and that of his witness, Sears, emphasized the convenience that would flow to Luper with issuance of the certificate, but intrastate convenience and necessity were not shown unless we assume without evidence that the government's unexpressed interest must be taken for granted. No other shipper of explosives or the ingredients or materials entering into the manufacturing process had the slightest concern respecting the method of making these shipments.

The burden of establishing the necessity and convenience contemplated by the lawmaking body rested upon the applicant, who in this case did not go beyond the profit element to himself and to his prospective associate, Luper Transportation.

Appeals from a circuit court's judgment coming from the public service commission are heard *de novo.* But in *Arkansas Express Co.* v. *Columbia Motor Transport Company,* 212 Ark. 1, 205 S. W. 2d 716, stress was placed upon the general rule that in making determinations anew the commission's findings are not to be dis-

regarded as surplusage. Like chancery appeals where the decree is persuasive, full effect must be accorded factual findings, and when the evidence is evenly balanced the administrative agency's views must prevail. This is particularly true in respect of technical matters where affairs not ordinarily contested before courts are being explored. The rule has no application here because the testimony is not in equipoise, nor is the subject-matter of a character requiring extraordinary talent as a prerequisite to an understanding of the related issues.

Our conclusion is that circuit court did not err in reversing the commission's findings, and the judgment is affirmed.