THE ARKANSAS MOTOR FREIGHT LINES, INC. v. HOWARD.

5-646                                            278 S. W. 2d 118

Opinion delivered April 18, 1955.

[Rehearing denied May 16, 1955.]

Thomas Harper, for appellant.

C. Lawrence Blackwell, Ed. E. Ashbaugh and Louis Tarlowski, for appellee.

GEORGE ROSE SMITH, J. This appeal brings up for review an order by which the Public Service Commission approved a partnership's application for permission to sell its motor carrier business to the appellees. The statute provides that such a sale shall not be authorized if the Commission finds that the sale will be inconsistent with the public interest or that the seller has not rendered reasonably continuous service prior to the application for transfer. Ark. Stats. 1947, § 73-1715. The appellants, competing carriers who resisted the application for approval of the sale, contend that the Commission was not justified by the evidence in holding that either of these statutory conditions had been satisfied.

The concern being sold is a small enterprise that the selling partnership has been operating under the trade name of Atlas Transfer & Warehouse Company. On January 8, 1953, after litigation, the firm was issued a certificate by which it was licensed as a common carrier of general commodities, household goods, and heavy machinery. See Ark. Motor Freight Lines, Inc. v. Johnson, 221 Ark. 157, 252 S. W. 2d 814. By the terms of the certificate Atlas was authorized to operate as a motor carrier upon designated highway routes that extend into every section of the State.

Although the certificate authorizes a wide range of operations, both as to the commodities to be carried and the territory to be covered, Atlas has been unable to exercise to any great extent the privileges conferred by its permit. The company has continuously maintained only one terminal, located at Pine Bluff, and its rolling stock at the time of the application to sell consisted of one

truck, three tractors, and four semi-trailers. During the thirteen months that elapsed between the issuance of the certificate and the Commission's hearing Atlas had carried only thirty-nine shipments of freight, although it is shown that the company advertised for business and never refused any cargo that was tendered to it. The thirty-nine shipments included thirty movements of household goods, five of machinery, and four of timber. From the record it may be assumed that timber is classed as a general commodity, as it is obviously not within the other two classifications that were named in Atlas' certificate.

Upon this proof the Commission found that Atlas had been rendering reasonably continuous service. We are not willing to say that the Commission was in error. Inasmuch as the Commission's knowledge of its own specialized field is undoubtedly superior to ours, its judgment on a question of fact is not to be set aside unless clearly against the weight of the testimony. *Wisinger* v. *Stewart*, 215 Ark. 827, 223 S. W. 2d 604. No difficult problems of law were presented to the Commission in this case. Whether there is a need for the whole range of facilities that might be made available under the Atlas certificate is not the question, for the issue of public convenience and necessity was determined when the permit was granted. Nor was Atlas required to show that it had fully utilized the possibilities lying at its disposal; no law or regulation requires that a motor carrier systematically travel over all its territory with trucks that are empty for want of business.

The appellants take the position that the statutory requirement of reasonably continuous service is intended to prevent a dormant franchise from being offered for sale to the highest bidder. This may be true, but the Commission was warranted in concluding that the Atlas certificate has not been dormant. This little company, with relatively modest assets, held itself in readiness to render service, advertised its existence, and accepted whatever business was offered. Under the statute complaint might have been made that it was not transporting

"all the commodities authorized . . . over all the routes authorized," Ark. Stats., § 73-1715; but no such complaint was lodged by the Commission, the public, or any competing carrier. In this proceeding the issue is narrowed to whether the company's service has been reasonably continuous; the Commission's affirmative answer is not contrary to the evidence.

Not much need be said with respect to the contention that the proposed transfer will be inconsistent with the public interest. The protestants' witnesses were forthright in admitting that their anxiety results from the prospect of the Atlas certificate's being transferred to the two appellees, independent operators with experience in the trucking field. Each of these witnesses expressed the same thought: that a more active utilization of the Atlas franchise will take some business from other established carriers, that this loss of traffic will result in a deterioration in the service heretofore rendered, and that the public will therefore suffer. Such considerations would be pertinent if the present issue were that of public convenience and necessity, but they are not a ground for denying the appellees an opportunity to fill the need that was found to exist when the Atlas certificate was granted —a need that Atlas itself might have alleviated had it been able to expand its facilities to the competitive extent that now cause the appellants to be disturbed.

Affirmed.

HOLT and WARD, JJ., dissent.

WARD, J. (dissenting). It is my conviction that the majority opinion is wrong and that, if allowed to stand, it could lead to a nullification of all protection the law seeks to afford public carriers which have diligently exercised their franchises.

The law pertinent to this situation in 1941 read, in all essentials, as follows:

"(b) Permits . . . shall not be assigned . . . where the Commission finds such action will be inconsistent with the public interest, or will have the effect of

destroying competition or creating a monopoly.'' (paragraph 14 Act 367, 1941 - Ark. Stats. § 73-1715)

In 1953 Act No. 386, § 5, added to the above, immediately following the last word quoted, this language:

''; nor where it appears that *reasonably continuous service* under the authority . . . granted by the permit . . . has not been rendered prior to the application for transfer, . . .'' [emphasis supplied] (§ 5, Act 386, 1953 - Ark. Stats. Supp. § 73-1715)

The above quoted statutes focus the real question in this case, viz: What significance should be given to the words ''reasonably continuous service''?

To my mind the answer is clear. It should be such a continuous service [shown by the evidence at the hearing] that the Commission would not feel the need of further evidence to determine the question of ''necessity and convenience'' if a new permit was being considered. For an explanation of what is meant no better example could be devised than the very case under consideration.

In 1951 the Commission issued a certificate to Johnson authorizing him to haul commodities over a vast network of state highways. Presumably the Commission would not have issued the permit to Johnson unless it first found from competent testimony that it was at the time justified on the ground of ''public necessity and convenience.'' If, on the hearing before the Commission in this instance, Johnson had shown that he had given ''reasonably continuous service'', during the intervening period then the Commission would have been justified in concluding that the ''public necessity and convenience'' still existed. However, since it is clear that Johnson made no such showing, the Commission is bound to have acted arbitrarily.

Another example will illustrate the injustices possible under the majority opinion. Mr. X gets a permit in 1940 to haul from A to B, but there is a scarcity of customers and X does not operate. By 1954 Y Co. has built up and adequately handles a prosperous freight

business. Then X's franchise becomes valuable and in 1954 he desires to sell his franchise to financially strong Z Co. It appears obvious to me that the purpose of the 1953 Act was in effect to prevent the Commission from authorizing the sale to Z Co. without first ascertaining if the "public necessity and convenience" justified additional freight service from A to B. The substitute [provided by the 1953 Act] for a hearing on "public necessity and convenience" was that X show "reasonably continuous service." Since the proof here positively shows a service by Johnson that could not by any stretch of the imagination be considered "reasonably continuous," the majority opinion cannot be justified.

If the words "reasonably continuous service" do not have the significance we attach to them, then they have no obvious meaning. Indicative of the fact that these words were intended to have significant meaning is that they were deliberately added after 12 years of experience under the old statute.

JUSTICE HOLT joins in this dissent.