NATIONAL TRAILER CONVOY, INC. *v.* CHANDLER TRAILER CONVOY, INC.

5-2447                                    349 S. W. 2d 672

Opinion delivered September 25, 1961.

[Rehearing denied October 23, 1961.]

*Louis Tarlowski,* for appellant.

*Roy Finch,* for appellee.

NEILL BOHLINGER, Associate Justice. The appellant is a corporation engaged in the transportation of mobile homes and has authority to operate interstate in all states and intrastate authority in 35 states. It made application to the Arkansas Commerce Commission for authority to operate intrastate as a common carrier by motor vehicle, trailers in initial and secondary movements, the initial movement being defined as the movement of a trailer from point of assembly or manufacture to a dealer, and secondary movement covers all other movements.

The appellee, Chandler Trailer Convoy, Inc., is a corporation operating under authority from the Arkansas Commerce Commission to move trailers intrastate in both secondary and initial movements over major highways in Arkansas and also has interstate authority. The appellee, Wendell Chandler, operates as the Wendell Chandler Trucking Company and has been engaged in moving mobile trailers intrastate since 1958.

The commerce commission denied the application of the appellant and upon appeal to the circuit court, that court also denied the application and the case is presented here on an appeal from that adverse judgment.

At the outset we are mindful of the fact that when the legislature has set up a fact finding body which is authorized to issue or withhold permits, and that body has had the advantage of hearing the witnesses testify, the courts are slow to set aside its findings, but "an appeal from the decision of the commerce commission is tried *do novo* [here] on the record," *Arkansas—Best Freight System* v. *Missouri Pacific Freight Co.,* 233 Ark. 685, 348 S. W. 2d 694, which pronouncement is bottomed upon Ark. Stats., § 73-134, " * * * the Supreme Court may and shall review all the evidence and make such findings of fact and law as it may deem just, proper and equitable."

The law that governs this case has been concisely stated over a number of years without modification or deviation and while it is said in *Potashnick Truck Service, Inc.* v. *Missouri & Arkansas Transportation Co.,* 203 Ark. 506, 157 S. W. 2d 512, "The law does not grant a monopoly, nor does it intend to permit competition not required by the public convenience and necessity. These are questions of fact which the commission has the authority to investigate and determine, subject to the review by the courts to which appeals may be taken," the finding of the Commission and lower court should be affirmed unless it appears to be contrary to the preponderance of the testimony. The general rule is stated by this court in *Missouri Pacific Railroad Com-*

*pany* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644, as follows: ''The general rule is that a certificate may not be granted where there is existing service in operation over the route applied for, unless the service is inadequate, or additional service would benefit the general public, or unless the existing carrier has been given an opportunity to furnish such additional service as may be required.'' See also *Southeast Arkansas Freight Lines, Inc.* v. *Arkansas Corporation Commission,* 204 Ark. 1023, 166 S. W. 2d 262.

Pond on Public Utilities, 4th edition, § 913, states: ''In granting certificates, the public convenience and necessity should be the first consideration, and the interest of public utilities already serving the territory secondary, while the desire of a new applicant for a certificate is relatively a minor matter for the consideration of the commission.''

In the case of *Santee* v. *Brady,* 209 Ark. 224, 189 S. W. 2d 907, this court quoted from 42 C. J. 687 the following: ''The convenience and necessity which the law requires to support the public service commission's order for the establishment or extension of motor vehicle transportation service is the convenience and necessity of the public distinguished from that of an individual or any number of individuals, and this is the primary matter to be considered in determining what constitutes such public convenience and necessity in a particular case, and the propriety of granting a certificate to that effect. The necessity for the proposed service must be considered as well as the added convenience thereof, although the word 'necessity' is not used in this connection in the sense of being essential or absolutely indispensable, but in the sense that the motor vehicle service would be such an improvement of the existing mode of transportation as to justify or warrant the expense of making the improvement.'' See also 60 C.J.S., Motor Vehicles, § 90.

The court in the *Santee* case, *supra,* concisely summed up the things which must be found if the order of the commerce commission is to be reversed. In order

890

to reverse the judgment before us, we must find that, notwithstanding already existing service, " * * * the present service is inadequate; or * * * that additional service would benefit the general public * * *." We do now so find.

Reviewing the testimony in the light of the pronouncement in *Santee* v. *Brady,* wherein Pond on Public Utilities is quoted, we direct our attention first to the public convenience and necessity, secondly to the interest of public utilities already serving the territory and the desire of the new applicant for a certificate is a relatively minor matter.

In arriving at the "public convenience and necessity," we view the public in these segments:

(1) As a matter of sequence, and not with reference to weight or importance, there are the dealers in mobile homes. There are mobile home plants in this state located at Walnut Ridge, Newport, Jacksonville, Camden and Arkadelphia. The movement of mobile homes from these plants to dealers within the state must be made by those having intrastate licenses or authority. There are a large number of trailer and mobile home dealers in the State of Arkansas and they must of necessity have the mobile homes brought to their concentration points and delivered from there to the locations selected by the purchasers. It appears that there are also movements involved in the repossession of trailers.

(2) Another segment of the public which is concerned in this matter is those that use the mobile homes. The record reflects that there is a concentration of mobile homes at Hot Springs, at the University and colleges where they are utilized by married students, and extensive use is also made by military personnel, construction workers and people who visit the recreation areas, as well as others who utilize them as more or less permanent dwellings.

(3) A third segment of the public, whose convenience and necessity is involved, may be defined as those

who travel the highways. The record in this case reflects that trailers, over the years, have increased in size and weight from small compact vehicles, easily towed behind a passenger automobile, to where at the present time trailers are being built 10' wide and in excess of 50' in length and weighing from 16 to 18,000 pounds. These vehicles require a public transportation system to transport them, and their size precludes their being towed behind a passenger automobile and requires that they be moved by trucks which are prepared for this purpose of towing mobile homes and which contain the safety requirements as promulgated by the U. S. Interstate Commerce Commission and the Arkansas Commerce Commission, as well as Ark. Stat., Anno., § 75-806, which sets up statutory safeguards, and that skilled personnel is a necessary adjunct in such movements. That movement, except under the licensing and regulation of the commerce commission, constitutes a potential hazard on the highways.

We find, from the testimony in this case, that the president and general manager of the Chandler Trailer Convoy, Inc., one of the appellees, and Wendell Chandler, who testified that he is the owner of the Wendell Chandler Trucking Company, are relatives and occupy the same office in Little Rock and have the same telephone. Beyond the office in Little Rock, we do not find that the appellees maintain places of business at other locations and of the 30 trucks used by the Chandler Trailer Convoy, Inc., but one truck is owned by the company, the others being rented, and appellee Wendell Chandler testified that he owns two pieces of equipment.

The plan of operation of appellees seems to be that their drivers store the equipment used in the business of the appellees at their homes. The appellees have no telephone listed in the state except at the office at Little Rock but their drivers, in returning from a trip, call Little Rock and are given instructions about any moving to be handled in their locality. If the appellee finds it necessary to dispatch trucks some distance from Little

Rock, an extra charge is made for the distance the equipment travels without the load.

Whether or not the manner of conducting the business of transporting mobile homes has been the best that the appellees could do under the circumstances we are not advised, but the record contains much testimony that the service in the transporting of mobile homes and trailers has been so inadequate that dealers and owners of mobile homes have had to resort to the use of services from unlicensed or 'wildcat' operators, although they prefer doing business with legal operators. The record further shows that passenger cars, trucks without safety equipment, even a butane truck and farm tractors, have of necessity been used in this transportation which should only be undertaken by those that have the proper equipment and trained personnel, and are licensed.

The burden of showing that the service being rendered is inadequate and that additional service would benefit the public is upon appellant. We think the appellant has made the showing that entitles it to relief.

We have searched the record and find no statement in which the appellees have expressed a willingness or any plans to remedy the defects in this service.

We are of the opinion that additional service will benefit the general public and we do not feel that either the Commission or the circuit court have given proper weight to the convenience and necessity of the public generally. For the reasons herein stated this cause is reversed and remanded to the Pulaski Circuit Court with directions that it direct the Arkansas Commerce Commission to grant the application of the appellant herein.