HAROLD FISHER ET AL *v.* J. L. BRANSCUM D/B/A
BRANSCUM MOVING & STORAGE COMPANY

5-4328                                    420 S. W. 2d 882

Opinion delivered November 20, 1967

*Louis Tarlowski,* for appellants.

*Claude Carpenter Jr.* and *Reid, Burge & Prevallet,*
for appellee.

JOHN A. FOGLEMAN, Justice. Appellants ask that we
reverse the trial court's affirmance of an order of the

Arkansas Commerce Commission authorizng the transfer of a certificate of public convenience and necessity. This certificate for the transportation of household goods was issued to one Homer Fisher on March 16, 1955. It covered irregular routes between points in Arkansas, but all shipments were required to originate or terminate in Mississippi County. Fisher entered into a contract with Branscum for the sale of these operating rights. The joint application of these parties was resisted by appellants, intrastate common carriers of household goods. Their protest was based upon the assertion that the certificate was dormant for failure to render reasonably continuous service. Consequently they contend that approval of the transfer is inconsistent with the public interest. One of the appellants held a virtually identical certificate which he had leased to Branscum.

Provision for transfer of certificates is contained in Ark. Stat. Ann. § 73-1767 (b) (Repl. 1957). Transfer is prohibited when the Arkansas Commerce Commission finds that such action will be inconsistent with the public interest or where it appears that reasonably continuous service has not been rendered under the authority granted by the certificate prior to the application.

After a hearing on November 23, 1966, the Arkansas Commerce Commission approved the transfer. It found that the certificate had not been dormant within the meaning of § 14, Act 397 of 1955 (§ 73-1767). It made a specific finding that Homer Fisher had been ill for a considerable period of time and unable to attend to business such as he normally would have conducted had he not become ill, but that afterwards he had been attempting to carry on his business.

The scope of our review on appeals is governed by § 73-134. This section provides that findings of fact of the circuit court are not binding on this court. On the other hand, it requires that we review all the evidence and make such findings of fact and law as we deem

just, proper and *equitable*. The circuit court is required to review the order upon the record presented and to enter its finding and order thereon.

In the opinion in *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604, the variable, apparently inconsistent and sometimes confusing statements in some of our opinions with reference to the meaning and application of this statute were harmonized. It is now clear that the review therein provided for is that which we make in chancery cases. *Missouri Pacific Transportation Co.* v. *Inter City Transit Co.,* 216 Ark. 95, 224 S. W. 2d 372. In doing this, we follow these rules:

1. The trial is de novo upon the record—not as if no judgment had been rendered, but for the purpose of determining whether the judgment is against the preponderance of the evidence. *Fort Smith Light & Traction Co.* v. *Bourland,* 160 Ark. 1, 254 S. W. 481; Missouri Pacific RR. *Co.* v. *Williams,* 201 Ark. 895, 148 S. W. 2d 644; *Wisinger* v. *Stewart,* 215 Ark. 827, 223 S. W. 2d 604.

2. Neither the findings of the circuit court nor the findings of the Commission are binding on appeal, but we will not upset the findings of the Commission unless they are clearly against the preponderance of the evidence. *Fort Smith Light & Traction Co.* v. *Bourland, supra; Potashnick Truck Service, Inc.* v. *Missouri & Arkansas Transportation Co.,* 203 Ark. 506, 157 S. W. 2d 512; *Arkansas Express, Inc.* v. *Columbia Motor Transport Co.,* 212 Ark. 1, 205 S. W. 2d 716; *Wisinger* v. *Stewart, supra; Washington Transfer & Storage Co.* v. *Harding,* 229 Ark. 546, 317 S. W. 2d 18.

3. In weighing the evidence, we do not substitute our judgment for that of the Commerce Commission. We will accord due deference to the Commission's findings because of its peculiar

competence to pass upon the fact questions involved and because of its advantage in seeing and hearing the witnesses during the full hearing. *St. Louis S. W. Ry. Co.* v. *Stewart,* 150 Ark. 586, 235 S. W. 1003; *Fort Smith Light & Traction Co.* v. *Bourland, supra; Potashnick Truck Service, Inc.* v. *Missouri & Arkansas Transportation Co., supra; Schulte* v. *Southern Bus Lines,* 211 Ark. 200, 199 S. W. 2d 742; *Wisinger* v. *Stewart, supra; Boyd* v. *The Arkansas Motor Freight Lines, Inc.,* 222 Ark. 599, 262 S. W. 2d 282; *National Trailer Convoy, Inc.* v. *Chandler Trailer Convoy, Inc.,* 233 Ark. 887, 349 S. W. 2d 672.

4. The burden is on the appellant to show that the judgment is erroneous. *Fort Smith Light & Traction Co.* v. *Bourland,* 160 Ark. 1, 254 S. W. 481.

5. When the evidence is evenly balanced, the Commission's views must prevail. *Boyd* v. *The Arkansas Motor Freight Lines, Inc., supra.*

In short, this court's function is to inquire whether the determination of the Commission is contrary to the weight of evidence. *Missouri Pacific Transportation Co.* v. *Inter City Transit Co.,* 216 Ark. 95, 224 S. W. 2d 372. In so doing, we must not lightly regard the findings of the Commission. *Superior Forwarding Co.* v. *Southwestern Transportation Co.,* 236 Ark. 145, 364 S. W. 2d 785.

Appellants now urge that the order approving the transfer is not supported by substantial evidence. The basis of their contention is that there was not substantial evidence to show that reasonably continuous service under the authority granted Homer Fisher had been rendered prior to the application for transfer.

Branscum testified that: During the four or five years he had operated under the lease of Beckham's certificate to the extent that it had been necessary for him to purchase additional equipment and to start con-

struction of a new warehouse; the population of the Blytheville area was increasing and industrial plants were moving in; he did considerable business because of the air base at Blytheville, and a lot of civilian moves were going on; to his knowledge, the only certificates for household goods carriers were those issued to Homer Fisher and three of the appellants, one of whom was previously Branscum's lessor. Branscum also testified, over the objections of the protestants, that he had reviewed the books and records of Homer Fisher and made a list of the moves the latter had made outside the city limits of Blytheville in the preceding two or three years. The list showed 23 moves outside the city limits of Blytheville in 1963, 19 in 1964, 17 in 1965, and 24 in 1966. Although he had access to information as to origin and destination, this was not shown on the list and it was very possible that most of the shipments during 1963 may have gone within a radius of a mile of Blytheville. He could not tell whether any of the moves on the list went to Little Rock or Texarkana or any other place in Arkansas. In the books he saw moves to Jonesboro and West Memphis.

Homer Fisher, at the time of the hearing, only owned one truck which he testified had been in operation continuously. He further testified that: He worked out of his home, a telephone there being listed in his name; he had two part-time employees; he had no warehouse; he was personally in charge of the operation; he had transported one or two or maybe more shipments between various points and places in Arkansas and Mississippi County in 1966; they originated in Blytheville, one going to Jonesboro and one to West Memphis; he handled 24 or 34 shipments to points around the edge of Blytheville, but outside the city limits, over the preceding two years; he had brought one or two to Little Rock and some to West Memphis during the life of the permit; he had not been able to handle more than a very few shipments during the preceding two years because of illness; he judged that there were five or six ship-

ments under the permit in Mississippi County just outside the edge of Blytheville during the month of September 1966; to the best of his memory he handled movements under the permit in August 1966, but didn't know where they went; he had records that would show movements during each month of 1966, but did not have them with him; he moved one or two to Fort Smith and one to Prescott and moved into Jonesboro in 1966, but couldn't remember any others; the service he had rendered in 1965 had been less because he had been in the hospital most of the time; the bulk of his operations under the permit was conducted in the immediate vicinity of Blytheville; he drove his truck himself; he was advertising in the telephone book, in his front yard and on his truck, and by getting in contact with persons, making solicitations and trying to get business; he was incapacitated from July 1965, up until the first of September, but for the preceding two months he had been up and moving people.

Protestants offered no evidence pertaining to the issues.

We are unable to distinguish this case from *The Arkansas Motor Freight Lines, Inc.* v. *Howard,* 224 Ark. 1011, 278 S. W. 2d 118. There the applicant for transfer was authorized to operate as a motor carrier of a wide range of commodities upon designated highway routes extending into every section of the state. It had been unable to exercise its authority to any great extent. It had only one terminal. Its rolling stock consisted of one truck, three tractors and four semi-trailers. It had carried only 39 shipments of freight during its thirteen-month existence, although it advertised for business and never refused any cargo tendered. The Commission found that reasonably continuous service had been rendered and this court affirmed. Language in that opinion which we here deem appropriate is as follows:

"* * * Inasmuch as the Commission's knowledge of its own specialized field is undoubtedly superior

to ours, its judgment on a question of fact is not to be set aside unless clearly against the weight of the testimony. *Wisinger* v. *Stewart*, 215 Ark. 827, 223 S. W. 2d 604. No difficult problems of law were presented to the Commission in this case. Whether there is a need for the whole range of facilities that might be made available under the Atlas certificate is not the question, for the issue of public convenience and necessity was determined when the permit was granted. Nor was Atlas required to show that it had fully utilized the possibilities lying at its disposal; no law or regulaton requires that a motor carrier systematically travel over all its territory with trucks that are empty for want of business.

* * [T]he Commission was warranted in concluding that the Atlas certificate has not been dormant. This little company, with relatively modest assets, held itself in readiness to render service, advertised its existence, and accepted whatever business was offered. Under the statute complaint might have been made that it was not transporting 'all the commodities authorized . . . over all the routes authorized,' Ark. Stats., § 73-1715; but no such complaint was lodged by the Commission, the public, or any competing carrier. In this proceeding the issue is narrowed to whether the company's service has been reasonably continuous; the Commission's affirmative answer is not contrary to the evidence.''

In this case, too, the certificate might have been revoked by the Commission upon complaint of any of the protestants, or upon its own motion, on the very ground of appellants' protest. See § 73-1767 (a). The fact that no such action was instituted could well be the basis for an inference that appellants' anxiety about the transfer is due to the prospect of a more active utilization of the authority by a healthy proprietor. Appellants argue in their brief that we ought not to permit a change in the competitive situation in Blytheville and say that they are willing for Fisher to continue operations under the

certificate. According to the opinion in the cited case, such a change is not a basis for a finding that the transfer is inconsistent with the public interest.

As a point for reversal, appellants allege error in the admission of the lists prepared by Branscum from the Fisher books. Since they were not business records kept in the ordinary course of business, they contend that these exhibits were inadmissible under either the best evidence rule or Ark. Stat. Ann. § 28-928 (Repl. 1962). Appellants' argument on this point is interwoven into, and forms a part of the basis for, their contention that there is not substantial evidence to support the Commission's findings. Even without these lists, the testimony would have been sufficient to meet the test laid down in the *Howard* case. Furthermore, it is not always necessary or advisable that boards, commissions and agencies of the nature of the Commerce Commission be required to adhere strictly to the rules of evidence governing courts in jury trials. See *Piggott State Bank* v. *State Banking Board*, 242 Ark. 828, 416 S. W. 2d 291. The necessity for strict adherence to rules of evidence by this Commission has also been eliminated by statute. The Arkansas Commerce Commission came into existence by virtue of Act 132 of 1957 (§§ 73-151 to 73-162). Under that Act all authority, powers, duties, privileges and jursdiction of the Arkansas Public Service Commission with respect to regulation of carriers were expressly conferred on the new Commission. We have recognized that procedure on appeals from the Commerce Commission is governed by the statutes which applied to the Arkansas Public Service Commission as the successor to the Corporation Commission which, in turn, was the successor to the Railroad Commission. See *Wisinger* v. *Stewart*, 215 Ark. 827, 223 S. W. 2d 604. By the same process of reasoning, the statute on rules of evidence governing the Public Service Commission while it had jurisdiction of matters pertaining to carriers should be applied. These rules were set out as a part of the same Act which changed the name of the Arkansas Corporation Commission to Arkansas Public

Service Commission. Act 40 of 1945. Subsection A of § 2 of that Act (§ 73-127) provides that the Commission shall not be bound by the strict technical rules of .evidence, but may exercise such discretion as will facilitate its efforts to ascertain the facts bearing upon the right and justice of the matters before it. We cannot say that the Commission abused its discretion in admitting the evidence attacked.

The uncontradicted evidence offered by appellee is not too insubstantial to support the findings of the Commission. The judgment is affirmed.

HARRIS, C. J., GEORGE ROSE SMITH and BROWN, JJ., dissent.

LYLE BROWN, Justice, dissenting. There is no substantial evidence to show that Homer Fisher rendered reasonably continuous service prior to the application for transfer. To the contrary, his own testimony shows the certificate was practically dormant.

Homer Fisher obtained his permit in 1955. He was authorized as a common carrier to transport household goods over the public highways throughout the State. The only restriction on carriage was "that all shipments must originate or terminate within Mississippi County, Arkansas." The history of his operation for the past four years indicates that practically all of his hauling was confined to Blytheville and the immediate vicinity. In those operations it should be pointed out that he needed no permit from the Commission. Ark. Stat. Ann. § 73-1758 (Repl. 1957). Transportation within a municipality "or within a commercial zone" is exempt from the permit requirements. The term "commercial zone" refers to any municipality *and the area outside its corporate limits* which is prescribed by the Interstate Commerce Commission as a commercial zone. Under the commercial zone table established by the ICC, the "Blytheville Zone" consists of the municipality and all unin-

corporated areas within four miles of its corporate limits. Code of Federal Regulations (1942) § 170.16 (3).

As to trips outside the city limits of Blytheville, appellee's testimony was to the effect that Fisher made twenty-five such trips in 1963, nineteen in 1964, seventeen in 1965, and twenty-four in 1966. But of these trips, appellee offered proof of only four such trips being made beyond the Blytheville area within the last two years. Those consisted of trips to Jonesboro, Fort Smith, Prescott, and possibly West Memphis. In describing all other trips outside of Blytheville city limits, these expressions described the distance of these hauls: "just out of the edge of Blytheville," and "in the immediate vicinity of Blytheville."

The majority opinion gives credit to Homer Fisher for trips made within the commercial zone of Blytheville. Fisher is clearly not entitled to that credit.

The apparent failure of Homer Fisher to render a reasonably continuous service outside the Blytheville zone may well have been caused, in part, by his limited facilities. He possessed only one truck—a 1948 model which he acquired secondhand; it had a fifteen foot van-type bed, six to seven feet in width; he had no warehouse; he used his home as his headquarters; and he had two part-time employees. Homer testified that he was in the hospital during part of 1965, indicating that his illness affected his business. However, in that year he was able, according to his testimony, to do more local hauling than during any of the reported four years.

I cannot agree with the majority in making a favorable comparison of this case with *Arkansas Motor Freight Lines* v. *Howard,* 224 Ark. 1011, 278 S. W. 2d 118 (1955). Fisher possessed by way of equipment one secondhand truck of ancient vintage; Howard's rolling stock consisted of a truck, three tractors, and four semitrailers. Howard maintained a terminal at Pine Bluff; Fisher operated from his home. In the thirteen months

prior to the Commission's hearing in the *Howard* case, Howard transported thirty-nine shipments into most of the counties in which he was authorized to operate; in a two-year period, Fisher made only four trips under his permit authority.

Finally, I cannot agree with the majority that "when the evidence is evenly balanced the Commission's views must prevail." That statement is taken from an opinion written by Chief Justice Griffin Smith. *Boyd* v. *Arkansas Motor Freight Lines*, 222 Ark. 599, 262 S. W. 2d 282 (1953). The statement is clearly dictum. It weakens the salutary attempt of the majority opinion to clarify our scope of review. Furthermore, I cannot conceive it to be the law; in hearings before the Commission, one of the parties has the burden of proof. How can we say the burden is met "when the evidence is evenly balanced?"

HARRIS, C. J., and GEORGE ROSE SMITH, J., join in dissent.