ARK. STATE BOARD OF PHARMACY v.
AUD EARL WHAYNE ET AL

5-5284                                                    454 S. W. 2d 667

Opinion delivered June 8, 1970

*Warren & Bullion,* for appellant.

*Brown, Compton, Prewett & Dickens,* for appellees.

CONLEY BYRD, Justice. Appellant Arkansas State Board of Pharmacy, pursuant to Ark. Stat. Ann. § 72-1040 (Supp. 1969), revoked the pharmacist's licenses of Aud Earl Whayne and Gene W. Porter, Sr., on the asserted grounds that they had aided and abetted the practice of pharmacy by a person not authorized to practice pharmacy by the Arkansas State Board of Pharmacy, such person being Suella Hull. On review pursuant to Ark. Stat. Ann. § 5-713 (Supp. 1969), the trial court held that the activities of Suella Hull did not constitute the practice of pharmacy and therefore reversed and dismissed the charges against appellees Aud Earl Whayne and Gene W. Porter, Sr. For reversal appellant in its statement says:

> "The principal issue presented is whether one who interprets physicians prescriptions for dangerous drugs and types labels for prescription drugs which give the directions for taking the drug is performing one of the functions of a pharmacist contrary to Arkansas Statutes restricting to licensed pharmacists the right to 'fill prescriptions, compound and dispense drugs and medicines or otherwise perform the duties and functions of a registered pharmacist.' "

Mrs. Hull's activity behind the prescription counter with respect to refill prescriptions and new prescriptions is set forth in her affidavit as follows:

> "[W]ith reference to any work done by me behind the prescription counter the following is my routine and is under the direction and supervision of either Mr. Porter or Mr. Whayne:
>
> 1. A customer requests from one of the pharmacists, one of the other ladies who work in the store or myself a refill of a prescription. This re-

quest may be received in person or by telephone. The person receiving the request obtains the prescription number and the name of the person for whom the medication is prescribed. This information is written in the appopriate spaces on the outside of a receipt bag by the person receiving the order.

2. The prescription receipt bag is then handed to me by the person in the store who took the order.

3. Our prescriptions are filed numerically and in stacks of one hundred (100). I remove from the prescription files the appropriate prescription file which contains the prescription number ordered.

4. I then take a Medic Pharmacy prescription label and type in the appropriate spaces the prescription number, the name of the prescribing physician, and the name of the patient, the prescribing physician's directions, the initial of the pharmacist on duty and the date.

5. I then lay the prescription receipt bag, the prescription file opened to the appropriate prescription, and the label as typed by me on the prescription counter, stacked in the order herein recited, *i. e.,* the typed label on top.

6. After the pharmacist fills the prescription, he places the label on or in the container, enters the price on the prescription receipt bag and places the container on the top of the prescription receipt bag. I enter the tax and total charges in the appropriate places on the prescription receipt bag and place the container in the prescription receipt bag.

7. I then hand the prescription receipt bag to one of the ladies in the front of the store and they, in turn, deliver the prescription receipt bag containing the order to the patient and collect the charges shown.

8. At no time do I ever place a label on a prescription container.

9. After the prescription has been filled by the pharmacist, I return the prescription file to the appropriate files.

10. As to new prescriptions, if such is handed to me by a customer or one ot the ladies who work in the front of the store, I follow the following procedure:

(a) I stamp the assigned number on the new prescription; at the same time, I stamp the same number on a Medic Pharmacy label and a Medic Phamacy prescription receipt bag. This is done with a numbering machine which is set to stamp the same number three times.

(b) I then take the numbered Medic Pharmacy prescription label and type in the appropriate spaces the name of the prescribing physician, the name of the patient, the prescribing physician's directions, the initial of the pharmacist on duty and the date.

(c) I then lay the prescription receipt bag, the new prescription and the label as typed by me on the prescription counter, stacked in the order herein recited, i. e. the typed label on top.

(d) I then follow the procedures outlined in paragraphs six; seven and nine of Section IV of this affidavit.

(e) At no time do I ever place a label on a prescription container. I do not count, compound or place in container any medications prescribed by a physician for a patient.

Appellant controverts Mrs. Hull's affidavit in three

respects—*i. e.,* (1) It contends that the evidence of its inspector Mr. Woodrow Little constitutes substantial evidence that Mrs. Hull with the knowledge and consent of Whayne and Porter affixed labels to drug containers; (2) that Mrs. Hull would go back into the medicine department and obtain the bulk container of the drug called for in the prescription and set the drug container on the prescription, apparently for the convenience of the druggist; and (3) that Whayne and Porter both freely admitted that Mrs. Hull interpreted the directions on prescriptions and typed them on the label. Appellees argue that items 1 & 2 are not supported by substantial evidence under the record here involved and that item number 3—*i. e.,* that Mrs. Hull interprets the direction on prescriptions—is not supported by the record.

For purposes of this decision and without determining whether the evidence is substantial, we will treat the record as establishing that with respect to refill prescriptions Mrs. Hull does affix or place in the container the prescription labels before the prescription is filled by the druggist. We also assume that the evidence shows that Mrs. Hull does go back into the medicine department and bring forth the bulk drug and set on the label prior to the filling of the container by the druggist.

However, the record does not sustain appellant's contention that Mrs. Hull interprets the directions on the prescriptions. In this respect Mr. Whayne on cross-examination testified:

"Q. When you take a prescription in and she stamps it how do you determine whether that is a controlled drug or just an ordinary prescription?

A. I would do that.

Q. Who is going to determine on telephoned in prescriptions does she take those?

A. I take all of them over the telephone.

Q. Who is going to interpret the directions?

A. I write the prescription out and lay it down.

Q. She interprets the directions on the prescriptions and types them on the labels?

A. She reads them herself.

Q. She reads them herself and types the directions on labels?

A. Yes Sir."

The only description of the duties of a pharmacist is that given in Ark. Stat. Ann. § 72-1011.8 (Repl. 1957), as follows:

Any person who is not an Arkansas registered pharmacist or a licensed 'Practical Druggist,' or a student serving internship, who shall fill a prescription, compound or dispense medicine or *otherwise perform the functions of a pharmacist,* shall be guilty of a misdemeanor punishable by a fine of not less than fifty ($50.00) dollars, nor more than one hundred ($100.00) dollars for the first offense and not less than one hundred ($100.00) dollars and/or thirty (30) days imprisonment for each succeeding offense thereafter. Each day that such person shall fill prescriptions, compound, dispense medicines or *otherwise perform the functions of a pharmacist* shall constitute a separate offense. Any registered pharmacist or licensed 'Practical Druggist' who shall aid, abet or encourage any person to violate the provision of this section shall have their certificate of registration or their permit revoked or suspended, within the discretion of the Board of pharmacy." (Emphasis supplied)

Appellant here contends that Mrs. Hull's activities come within the phrase "or otherwise perform the functions of a pharmacist."

In *Arkansas State Board of Pharmacy* v. *Patrick,* 243 Ark. 967, 423 S. W. 2d 265 (1968), the evidence showed that a Mrs. Hughes not only filled a prescription, typed the name on the label but also placed the label on the filled package and handed it to the Pharmacy Board's investigator. We there pointed out that in order to place the proper label on a filled container some knowledge of drugs was necessary and held that the affixing of the label to a filled container constituted the practice of pharmacy in violation of Ark. Stat. Ann. § 72-1040(5). However, it appears to us that the affixing of a label to an empy container for the proposed use by a licensed pharmacist is not subject to the same construction. In the latter case the clerk performs only a mechanical function and needs no knowledge whatever of the nature of the drugs involved or their effect upon a patient in the event the pharmacist himself makes an error in checking the label against the prescription placed there for his convenience as a time saving procedure.

Appellant has cited us no authority other than the Patrick case to sustain the position it here takes. Our research reveals no cases reaching as far as appellant argues and we certainly do not believe that the statute which applies only to persons "who shall fill a prescription, compound or dispense medicine or otherwise perform the functions of a pharmacist" can be so extended by judicial construction to make the conduct of Mrs. Hull a violation of the law under the statute above.

Affirmed.